**Margaret R. MALONE, Appellant,**

v.

**Hershel W. GOBER, Acting Secretary of Veterans Affairs, Appellee.**

No. 95–1262.

United States Court of Veterans Appeals.

Dec. 2, 1997.

540

Kevin Malone (non-attorney representative) was on the brief for appellant.

Mary Lou Keener, General Counsel; Ron Garvin, Assistant General Counsel; Thomas A. McLaughlin, Deputy Assistant General Counsel, and Michele Russell Katina, Washington, DC, were on the pleadings for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Judges.

FARLEY, Judge:

The appellant, Margaret R. Malone, appeals a November 13, 1995, decision of the Board of Veterans' Appeals (BVA or Board) denying reimbursement for the cost of unauthorized private hospitalization and nursing home care for her husband, deceased veteran Paul F. Malone. The appellant filed an informal brief and the Secretary filed a motion for summary affirmance in lieu of a brief and a memorandum of law in response to the Court's April 10, 1997, order. This appeal is timely and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a). For the reasons that follow, the Court will affirm the decision of the Board.

## I. BACKGROUND

The veteran, Paul F. Malone, served on active duty from September 8, 1942, to December 22, 1946. Record (R.) at 20. The veteran was granted service-connected benefits for incomplete paralysis of his arm and hand, rated 50% disabling from March 24, 1950. R. at 25. On January 27, 1990, the veteran was transported via ambulance to the Waltham Weston Hospital and Medical Center (Waltham) with general weakness and flu-like symptoms. R. at 31. The ambulance service's report indicated that the veteran had originally requested to be transported to the VA hospital but "on divert, [was] transferred to Waltham." R. at 31. Dr. Kim at the VA hospital told the ambulance to divert. *Id.* Mr. Malone was discharged from Waltham on February 23, 1990, with diagnoses of "herpes zoster with question herpetic encephalitis," congestive heart failure, diabetes mellitus, and paroxysmal atrial tachyrhythmia. R. at 29. In addition, at that time he was known to have coronary artery disease, a previous myocardial infarction, and status post cerebrovascular accident. *Ibid.* He was admitted to the Marist Hills Nursing Home, a private facility, on February 23, 1990, for respite care. R. at 60, 66. He was readmitted to Waltham on April 12, 1990, with hypotension, and returned to Marist Hills on April 18, 1990. R. at 34, 100, 136. He was readmitted to Waltham again on July 2, 1990, where he died of congestive heart failure on July 19, 1990. R.

at 27, 175–76. The appellant, the veteran's widow, sought burial benefits, but was denied because the cause of the veteran's death was not service connected. R. a 153.

In May 1990, while the veteran was still in the Marist Hills Nursing Home, Mrs. Malone wrote a letter to the VA Outpatient Clinic seeking reimbursement for the cost of the veteran's nursing home and hospital care not covered by his medical insurance. R. at 123; *see also* 38 U.S.C. § 1701(5) ("hospital care"). Mrs. Malone's son, Kevin Malone, renewed and updated this request on her behalf both before and after the veteran's death. R. at 139, 142, 150. The claim for reimbursement was denied, and Kevin Malone appealed on behalf of his mother. *See* R. at 156, 158, 162, 164, 168, 169, 170. Kevin Malone testified at a hearing conducted on January 14, 1991. R. at 179. The BVA subsequently dismissed the appeal on the basis that Kevin Malone was not the proper claimant (R. at 193), but the claim was eventually reevaluated with Mrs. Malone as claimant and her son, Kevin Malone, as her representative (R. at 198, 200, 206, 210). On October 31, 1994, the BVA remanded the appellant's claim for further development. R. at 212. In its November 13, 1995, decision here on appeal, the BVA denied the appellant's claim for reimbursement or payment of unreimbursed private medical expenses because the medical care had not been previously authorized and the criteria for reimbursement for unauthorized medical care had not been met. R. at 6.

## II. APPLICABLE LAW

Entitled "Eligibility for hospital, nursing home, and domiciliary care," section 1710 of title 38 of the U.S.Code defines those veterans to whom the Secretary "shall" and "may" provide hospital care and medical services. At the time of the veteran's hospitalizations and nursing home care, section 1710 provided that: "The Secretary ... *shall* furnish hospital care, and *may* furnish nursing home care, which the Secretary determines is needed ... to any veteran who has a service-connected disability rated at 50 percent or more." 38 U.S.C. § 1710(a)(1)(D) (1991) (emphasis added); *see also* 38 U.S.C. § 1710(a)(1)(B) (1997) (effective as of January 1, 1997); *Karnas v. Derwinski,* 1 Vet. App. 308 (1991) (When a law or regulation

changes after a claim has been filed or reopened but before the administrative or judicial review process has been concluded, the version most favorable to the veteran applies "unless Congress provided otherwise." In this case, Congress has "provided otherwise" by designating a specific effective date for the amended statute.). Purely an announcement of direction and authority, § 1710 contains neither a mechanism to enforce the "shall" command nor remedial or reimbursement provisions for its violation. There are, however, two other statutes which do permit reimbursement in certain limited circumstances.

Pursuant to 38 U.S.C. § 1703(a), when VA facilities are not able to provide "economical" hospital care or medical services, the Secretary "may" contract with non-VA facilities for such care and services, either on a group or an individual basis. 38 U.S.C. § 1703(a) (1991 & Supp.1997); 38 C.F.R. § 17.52 (1996) (formerly 38 C.F.R. § 17.50b (1989)); *see also Hennessey v. Brown,* 7 Vet.App. 143 (1994); *Hayes v. Brown,* 6 Vet.App. 66 (1993). The Secretary's authority to contract with non-VA hospitals for hospital care, however, is available only under limited circumstances. *See* 38 U.S.C. § 1703(a)(1) (contract permitted for the treatment of a service-connected disability or a disability for which the veteran was discharged or released from active military, naval or air service), § 1703(a)(3) (contract permitted for emergency treatment of a veteran receiving care at a VA facility). Moreover, the admission of a veteran to a non-VA hospital at the expense of VA must be authorized in advance. 38 C.F.R. § 17.54 (1996) (formerly 38 C.F.R. § 17.50d (1989)).

The second avenue for potential relief for a veteran entitled to VA care forced to obtain treatment at a non-VA facility is 38 U.S.C. § 1728, which provides that the Secretary "*may,* under such regulations as the Secretary shall prescribe, reimburse ... for the reasonable value of such care or services ... for which such veterans have made payment." 38 U.S.C. § 1728(a) (emphasis added). However, such reimbursement is available only where:

(1) such care or services were rendered in a medical emergency of such nature that delay would have been hazardous to life or health;

(2) such care or services were rendered to a veteran in need thereof (A) for an adjudicated service-connected disability, [or] (B) for a non-service-connected disability associated with and held to be aggravating a service-connected disability . . . ; and

(3) [VA] or other Federal facilities were not feasibly available, and an attempt to use them beforehand would not have been reasonable, sound, wise, or practical.

*Id.* In view of Congress' use of the conjunctive "and," all three statutory requirements would have to be met before reimbursement could be authorized. *See Cotton v. Brown,* 7 Vet.App. 325, 327 (1995); *Hayes, supra; see also* H.R.REP. No. 93–368, at 9 (July 10, 1973) ("[The proposed provision a]uthorizes reimbursement of certain veterans who have service-connected disabilities, under limited circumstances, for reasonable value of hospital care or medical services . . . from sources other than the VA. Eligible veterans are those receiving treatment for a service-connected disability. . . . Services must be rendered in a medical emergency and VA or other Federal facilities must not be feasibly available.").

## III. APPLICATION OF LAW TO THE FACTS

### A. § 1710 Eligibility for Hospitalization

■ At the time Mr. Malone requested ambulance transportation to the VA hospital he had had a service-connected rating of 50% for partial paralysis of his arm and hand since March 1950. R. at 25. He therefore met the criteria of 38 U.S.C. § 1710(a)(1)(D), entitling him to treatment at VA facilities, even for non-service-connected conditions. 38 U.S.C. § 1710(a)(1)(D) ("The Secretary . . . shall furnish hospital care . . . which the Secretary determines is needed . . . to any veteran who has a service-connected disability rated at 50 percent or more, for any disability."). Notwithstanding the clear language of the statute, the Secretary argues that the veteran was not necessarily entitled to such care because the word "shall" does not really mean "shall." Secretary's Memorandum of Law in Response to Court Order (Mem.). Although the statute uses the phrase "shall furnish hospital care," the Secretary urges that the "clear legislative intent" was that only "if VA facilities and resources are *available* and *capable* of providing *needed* care and services, the [Secretary] must furnish the care and service to any eligible veteran able to present himself or herself at the VA facility to receive the care." Mem. at 5 (quoting Floor Statement of Senator Frank H. Murkowski in Support of Title XIX at pages 40–47, 44).

The Secretary's argument in this regard is, at this point, speculative at best because the Record on Appeal is silent as to why Dr. Kim diverted Mr. Malone's ambulance when he requested to be brought to the VA hospital. Nor is there any evidence which would be probative of the availability and capability of the VA hospital to provide care to Mr. Malone for his "general weakness" and "flu like symptoms." R. at 31. If the Court were to conclude that reimbursement might be otherwise available, a remand would be in order to develop the record in the context of the Secretary's argument; if, on the other hand, reimbursement is not possible, the evidentiary void is immaterial. Therefore, the Court will continue by taking the statute at face value, assuming that the veteran fell well within the parameters of eligibility under § 1710, and that the Secretary was required to furnish him with hospital care. Since care required by § 1710 was not furnished to Mr. Malone and he had to turn to a private facility at his own expense, we turn now to the question whether financial relief in the form of reimbursement is available.

■ "[I]t is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law whenever that right is invaded." *Marbury v. Madison,* 1 Cranch 137, 5 U.S. 137, 163, 2 L.Ed. 60 (1803) (quoting 3 WILLIAM BLACKSTONE, COMMENTARIES 23). However, where the remedy sought is a monetary award against the U.S. Government, and particularly where Congress has enacted an intricate and all-encompassing statutory scheme, such expenditures must be specifically authorized by statute. "An officer or employee of the United States Government . . . may not . . .

make or authorize an expenditure or obligation exceeding an amount available in appropriation or fund for the expenditure or obligation." 31 U.S.C. § 1341(a); *see also* 31 U.S.C. § 1350 (providing for criminal penalties for the violation of § 1341(a)); *Office of Personnel Management v. Richmond,* · 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) ("[T]he payments of money from the Federal Treasury are limited to those authorized by statute."); *c.f. Schweiker v. Chilicky,* 487 U.S. 412, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (holding that a monetary remedy against officers of the Social Security Administration (SSA) is not available, even for the alleged unconstitutional withholding of SSA benefits, where Congress has not provided for such a remedy in the "elaborate remedial scheme" of the SSA); *but cf. Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Supreme Court created a cause of action for money damages against individual federal employees for alleged constitutional violations but not one against the United States because, as Justice Harlan stated in his concurring opinion, "the sovereign still remains immune to suit." 403 U.S. at 410, 91 S.Ct. at 2012 (Harlan, J., concurring.)).

Similarly, in *Bush v. Lucas,* 462 U.S. 367, 103 S.Ct. 2404, 76 L.Ed.2d 648 (1983), "[g]iven the history of the development of civil service remedies and the comprehensive nature of the remedies ... available," the Supreme Court declined to augment the "elaborate remedial system" and "create a new substantive legal liability without legislative aid." Congress has created a comprehensive statutory scheme for the payment of veterans' benefits and this Court has recognized the limited nature of our power to create remedies not specifically authorized by Congress. *See, e.g., Lozano v. Derwinski,* 1 Vet.App. 184 (1991); *Fugere v. Derwinski,* 1 Vet.App. 103 (1990). Under these circumstances, we conclude that Congress has not created a reimbursement remedy and this Court lacks the authority to fashion one of its own making under the guise of § 1710 for breach of its mandate.

B. The Secretary's Authority to Contract Under 38 U.S.C. § 1703

■ Initially, it must be noted that although 38 U.S.C. § 1703 authorizes the Secretary to contract with non-VA facilities for the care of qualified veterans, and the implementing regulations specifically provide for payment by VA for such care to the non-VA facilities (*see* 38 C.F.R. § 17.55 (1997)) (formerly 17.50f (1989)), neither the statute nor the accompanying regulations provide specifically for *reimbursement* to a veteran who paid for such authorized services himself or herself. A review of our case law dealing with veterans seeking an order of the Court directing the Secretary to provide reimbursement reveals an assumption that reimbursement pursuant to § 1703 may be available, but point to no specific statutory authority in support of that assumption. *See Hennessey* and *Hayes,* both *supra.* Perhaps, one could argue, such an order is permitted under a theory that the veteran is a third-party beneficiary to a § 1703 contract and, thus, entitled to reimbursement under general contract law. *See* 38 C.F.R. § 17.123 (claim for reimbursement of services not previously authorized may be made by the veteran who received the services or the facility which provided the services). However, because the appellant in this case cannot prevail under § 1703 for other reasons, we need not address what remedies are available pursuant to that statute and its implementing regulations.

Section 1703(a) authorizes the Secretary to contract with non-VA facilities to provide hospital care or medical services when VA facilities are not capable of providing such services under certain, limited, circumstances. As pertinent to this appeal, the Secretary may contract with non-VA hospitals for hospital care for the treatment of a service-connected disability or a disability for which the veteran was discharged or released from the active military, naval or air service (38 U.S.C. § 1703(a)(1)), or for the treatment of "medical emergencies which pose a serious threat to the life or health of a veteran *receiving medical services in a Department facility* ... until such time as the veteran can safely be transferred to a Department facility" (38 U.S.C. § 1703(a)(3) (emphasis added)). Mr. Malone was service connected for partial paralysis of his arm and hand but he was not treated for that condition at Waltham and none of the conditions for which he

received treatment were service connected. Therefore, he was not eligible for contracted hospital services at a non-VA facility under § 1703(a)(1). *See also* 38 C.F.R. § 17.54. Mr. Malone also failed to meet the requirements of § 1703(a)(3) because, even if any of his hospitalizations were for medical emergencies, he was not "receiving medical services in a Department facility." 38 U.S.C. § 1703(a)(3).

Moreover, a veteran must be both eligible pursuant to § 1703 for contracted hospital care at non-VA facilities § 1703 *and* such care must be authorized in advance. *See* 38 C.F.R. § 17.54. Dr. Kim, a VA doctor, did divert Mr. Malone to Waltham, but his action does not constitute advanced authorization of private care at VA expense. *See Smith (Thomas) v. Derwinski,* 2 Vet.App. 378, 379 (1992) ("The advice of a doctor to go to a non-VA hospital is not the specific type of authorization contemplated in the regulation."). Even if, as the appellant argues, the veteran's July 2, 1990, admission to Waltham was preauthorized (R. at 159), Mr. Malone still was not eligible for reimbursement. *See* 38 U.S.C. § 1703(a)(1), (3); 38 C.F.R. § 17.52(1).

### C. § 1728 Reimbursement

■ The veteran also failed to satisfy the eligibility requirements for reimbursement pursuant to 38 U.S.C. § 1728. As discussed above, all three elements of § 1728(a) must be met for a veteran to qualify for reimbursement. *See Hayes, supra.* None of the veteran's hospitalizations at Waltham met all three requirements. Although there is no evidence as to whether a VA facility was "feasibly available" (38 U.S.C. § 1728(a)(3)), or whether the veteran's admissions were "rendered in a medical emergency" (38 U.S.C. § 1728(a)(1)), even if we were to assume that both of those elements were satisfied, the appellant still could not prevail. The remaining element of § 1728 requires that the care or services rendered were for either an adjudicated service-connected disability or for a non-service-connected disability held to be aggravating a service-connected disability. 38 U.S.C. § 1728(a)(3). As discussed above, the veteran's treatment at the non-VA hospital was not for an adjudicated service-connected disability or a non-service-connected held to be aggravating a service-

connected disability. Therefore, the appellant is not eligible for reimbursement for the veteran's non-VA treatment.

### D. Nursing Home Care

■ The appellant also seeks reimbursement for the veteran's care at Marist Hills Nursing Home. Section 1710 of title 38 of the U.S.Code does authorize the Secretary to provide nursing home care to certain eligible veterans. However, with respect to nursing home care, as opposed to hospitalization, the decision is left to the discretion of the Secretary *("shall" vs. "may")*. 38 U.S.C. § 1710(a)(1) ("The Secretary shall furnish hospital care, and *may furnish nursing home care* ... to a veteran who has a service connected disability rated at 50 percent or more." (emphasis added)); *see Webb v. Brown,* 7 Vet.App. 122, 125 (1994) (Holdaway, J., concurring) ("On the face of the statute [38 U.S.C. § 1703(a) ], ... the use of the word "may" connotes complete unfettered discretion of the Secretary."); *see also Corry v. Derwinski,* 3 Vet.App. 231, 235 (1992) (38 C.F.R. § 3.109(b)'s use of the word "may" commits the decision to extend the filing period of a Notice of Disagreement to the sole discretion of the Secretary); *accord Scott v. Brown,* 7 Vet.App. 184 (1994) (38 C.F.R. § 3.109(a)); *Willis v. Brown,* 6 Vet. App. 433, 435 (1994) (38 C.F.R. § 13.59(a)).

"[T]he Court has *no authority* to review decisions made by the Secretary which rest entirely within his discretion." *Willis,* 6 Vet. App. at 435–36 (emphasis added); *see also Tulingan v. Brown,* 9 Vet.App. 484 (1996) (Farley, J., concurring) (emphasizing that judicial restraint should be exercised with respect to the review of matters within the sole discretion of the Secretary). "An all-purpose 'abuse of discretion' standard would be inapplicable [to a matter within the sole discretion of the Secretary], for as the Supreme Court stated in *Heckler* [*v. Chaney,* 470 U.S. 821, 830, 105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985) ]: '[I]f no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.' '" *Darrow v. Derwinski,* 2 Vet.App. 303, 306 (1992); *but*

*see Stringham v. Brown,* 8 Vet.App. 445, 448 (1995) ("The standard of review this Court applies to a discretionary determination made by the secretary is whether such determination was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.").

Even where a matter is left to the discretion of the Secretary by statute, the Secretary would still be bound by any limitations placed upon the exercise of that discretion by regulation, and the Secretary's compliance with such regulatory criteria is subject to judicial review. *See Stringham,* 8 Vet.App. at 448; *Darrow,* 2 Vet.App. at 306; *Fugere,* 1 Vet.App. at 104; *see also Smith (Barbara) v. Derwinski,* 1 Vet.App. 267, 279 (1991) (Secretary's decision to waive a debt, although a matter within his discretion, is subject to review by this Court to determine whether the statutory standard was applied in accordance with the regulatory guidance or whether the decision was made in an arbitrary and capricious manner.). Here, Congress authorized, but did not direct, the Secretary to provide nursing home care to certain veterans; how and when to exercise that authority was left to the sole discretion of the Secretary. Although the Secretary has provided some guidelines for determining eligibility for nursing home care, the Secretary has not limited his discretion substantively or procedurally by regulation. *See, e.g.,* 38 C.F.R. §§ 17.47 (1989) (following the language of the statute: "Hospital care shall be furnished and nursing home care may be furnished . . . ,"); 17.48 (1989) (redesignated as 38 C.F.R. § 17.47 (1996) ("Considerations applicable in determining eligibility for hospital, nursing home or domiciliary care.")). Accordingly, there are no standards upon which the Court could review the Secretary's decision not to provide the veteran such care.

As the Board noted in its November 1995 decision, the appellant did not directly contest the Secretary's denial of the applications for nursing home care. Before this Court, the appellant does not assert, nor could she legally support any assertion, that the veteran was *entitled* to nursing home care because, as stated above, a decision to provide nursing home care is a matter solely within the discretion of the Secretary. Rather, it is the appellant's claim that, had Mr. Malone been admitted to the VA hospital, he *would have* been placed in a VA nursing home facility at VA's expense and, for that reason, the Secretary should reimburse her for the cost of such care. This argument is not premised upon any provision of law but seeks relief which is equitable in nature. This Court, however, does not have the authority to grant equitable relief. *See Shields v. Brown,* 8 Vet.App. 346, 351 (1995); *Darrow, supra; but cf.* 38 U.S.C. § 503 (*Secretary has discretion to award equitable relief based upon administrative error*).

## IV. CONCLUSION

It may appear that there is a gap in the statutory scheme created by Congress. On the one hand, section 1710 mandates that the Secretary "shall furnish hospital care" to numerous veterans who fall within any one of a number of carefully defined categories. On the other hand, when a veteran eligible for such mandated care is denied that care by the Secretary, there is little or, as here, no recourse available to that veteran. If this is a void in the legislative scheme, then it must be filled by legislative, as opposed to judicial, action.

Upon consideration of the record, the Secretary's motion for summary affirmance, the Secretary's memorandum of law, and the appellant's informal brief, the Court holds that the appellant has not demonstrated that the Board committed either factual or legal error that would warrant reversal or remand. *See Gilbert v. Derwinski,* 1 Vet.App. 49 (1990); *see also Anderson v. City of Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *Danville Plywood Corp. v. United States,* 899 F.2d 3 (Fed.Cir.1990). The Court also is satisfied that the BVA decision meets the "reasons or bases" requirements of 38 U.S.C. § 7104(d)(1). *See Gilbert, supra.* Since this is a matter of first impression, summary disposition is not appropriate and the Secretary's motion for summary affirmance is denied. *See Frankel v. Derwinski,* 1 Vet.App. 23 (1990). The November 13, 1995, decision of the Board of Veterans' Appeals is AFFIRMED.