**In re A PROPOSED AMENDMENT TO RULE 26(b).**

No. 98–425.

United States Court of Appeals for Veterans Claims.

April 24, 1998.

Before NEBEKER, Chief Judge, and KRAMER, FARLEY, HOLDAWAY, IVERS, STEINBERG, and GREENE, Judges.

## MEMORANDUM AND ORDER

PER CURIAM:

On February 19, 1998, the Chairman of this Court's Rules Advisory Committee submitted to the Court on behalf of a majority of the Rules Advisory Committee, in response to a December 1, 1997, transmittal from the Court, a proposed amendment to Rule 26(b) of the Court's Rules of Practice and Procedure (Rules), which addresses the matter of

extension of time for certain filings. (The text of that proposed amended Rule is included in an Appendix to this Memorandum and Order.) The Rules Advisory Committee was not unanimous and included three dissents with its report.

The Court's current rule derives from Rule 26(b) of the Federal Rules of Appellate Procedure and provides:

> The Court, on its own initiative or on motion of a party for good cause shown, may extend the time prescribed by these rules for doing any act, or may permit an act to be done after the expiration of such time, but the Court may not extend the time for filing a Notice of Appeal.

U.S. VET.APP.R. 26(b).

In its response to the Court, the Rules Advisory Committee expressed the opinion that the time generally consumed in concluding an appeal in this Court is excessive and noted that the Court could remedy the situation, in part, by adopting a stricter policy regarding motions for extensions of time. The Rules Advisory Committee recommended, however, that the Court provide clear standards for considering such motions and that it announce its intended action well in advance of an implementation date so that practitioners could adjust their own procedures. The Court has taken the Rules Advisory Committee's recommendation under advisement. The instant Memorandum and Order is issued to provide the Court's practitioners and the public with notice of this pending rulemaking proceeding and its background and of the Court's serious and growing concern about the matter.

## I. Background

The Department of Veterans Affairs (VA) General Counsel has a statutory duty to represent the Secretary before the Court: "The Secretary [of Veterans Affairs] shall be represented before the Court of Veterans Appeals by the General Counsel of the Department". 38 U.S.C. § 7263(a). This mandatory duty includes taking a position on behalf of the Secretary in every case before the Court. Under the Court's Rules, the following milestones mark the Secretary's responsibilities in presenting a case to the Court unless otherwise ordered by the Court: (1) within 60 days after the Notice of Docketing, file a designation of the record (U.S. VET.APP.R. 10(a)); (2) within 30 days after the appellant's counter designation or statement was due under Rule 10(b), transmit the record on appeal (ROA) (U.S.VET.APP.R. 11(a)(2)); and (3) within 30 days after service of the appellant's brief or application under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), file a response thereto (U.S.VET.APP.R. 31(a), 39(c)). Although much of the impetus for the proposed Rule 26(b) revision derives from multiple extensions of time sought by the Secretary in case after case, the Court does not limit this Memorandum and Order only to extensions sought by the Secretary.

The number of appeals being filed with the Court has increased dramatically. In fiscal year (FY) 1997, there were 2,229 new cases filed—in comparison with 1,620 in FY 1996, 1,279 in FY 1995, and 1,142 in FY 1994. There is reason to believe that the current level of appeals will not decline and may increase. The Court currently has in excess of 2,200 pending cases. The vast majority of these await action by the Secretary on designation and transmittal of the ROA or filing of a brief. In the past year, more than 4,000 extension motions were filed by the Secretary.

The Court finds that the resolution of appeals is being unduly and unreasonably delayed by the thousands of motions filed by the Secretary for extensions of time based on the demands of caseload assignments on the appellate attorneys assigned to representation duties by the General Counsel. The delays occasioned by these motions can serve to frustrate meaningful judicial review, as conferred by right on appellants by chapter 72 of title 38, U.S.Code. In some cases, appellants have died while pursuing appeals as to claims for disability compensation and other VA benefits that do not survive their deaths, *see Landicho v. Brown*, 7 Vet.App. 42, 47 (1994); *see also Zevalkink v. Brown*, 102 F.3d 1236, 1243–44 (Fed.Cir.1996) (noting approval of *Landicho, supra* ); in others, appellants who ultimately prevail are not eligible for an award of interest or damages stemming from a previous wrongful denial of ben-

efits by VA, *see, e.g., Bagwell v. Brown,* 9 Vet.App. 337, 338 (1996); *McRae v. Brown,* 9 Vet.App. 229, 235 (1996); *Martin (Donald) v. Principi,* 3 Vet.App. 553, 555 (1992).

## II. Court Actions

Because of these concerns the Court has taken a number of actions in the past year:

On February 24, 1997, in a precedential action, the Court expressed its general agreement with an appellant's opposition to a motion by the Secretary for an extension of time to file a response to the appellant's brief, which had been filed on November 8, 1996. The appellant there had stated: "The Secretary should ensure that he has sufficient resources available ... to enable his counsel to respond to an Appellant's opening brief in a timely manner". *Ehringer v. Brown,* 10 Vet.App. 103 (1997) (per curiam order). The Court stated as to the General Counsel's responsibilities:

> Such representation must be carried out in a professional manner that satisfies the obligation of counsel for the Secretary "as an officer of this Court", *MacWhorter [v. Derwinski* ], 2 Vet.App. [655, 657 (1992), *appeal dismissed as moot on other grounds,* 3 Vet.App. 223 (1992) ]. Whatever other responsibilities may be assigned to the General Counsel by the Secretary, her responsibility with respect to representation in this Court is one mandated by law. ***A copy of this order will therefore be directed to the General Counsel personally.*** See *United States v. Raimondi,* 760 F.2d 460, 461 (2d Cir.1985) (government agency must bear ultimate responsibility (including occasionally reassigning a case to another attorney) when staffing pattern in that agency is insufficient to meet judicially imposed requirements).

*Ehringer,* 10 Vet.App. at 103–04 (emphasis added). The Court then reduced by 25 days the added time that the Secretary was seeking and granted the motion in question. The Court concluded:

> No further opposed extensions of time to file a brief will be granted, absent truly exceptional circumstances, ***which do not include a heavy caseload on the part of counsel for the Secretary in particular or general.*** See *Raimondi, supra.*

*Id.* at 104 (emphasis added). Since then, the Court has repeated this *Ehringer* caution in numerous cases in which the Secretary's motion for an extension has been opposed. The effect of such an "*Ehringer* order" is to put the parties on notice that, absent extreme circumstances (not including caseload demands), the Secretary should not request any future extension in that case.

Nonetheless, as the number of new cases in the Court has continued to rise, so has the number of the Secretary's extension motions. The Court has continued to express its concerns in a number of ways:

On August 7, 1997, Chief Judge Nebeker, acting on a third extension motion in *Kolman v. Gober,* alerted VA to the Court's concern, saying:

> A major purpose for the filing of briefs is to assist the Court in timely disposition of appeals. Accordingly, the Court finds a need for the Acting Secretary to file a brief in each case that reaches disposition on the merits. While repeated motions for extension by the Acting Secretary delay the appellate process, the primary disservice is not to the Court, but to the community of people who seek redress in the Court. Consequently, the Acting Secretary should view adequate staffing and efficient organization of [General Counsel] Group VII to be a necessary service to veterans and other claimants, and not simply an accommodation to the Court's demands.

*Kolman,* No. 96–428 (Aug. 7, 1997) (single-judge order); *see also MacWhorter v. Derwinski,* 2 Vet.App. 133, 135 (1992) ("counsel has an ethical obligation to correctly advise the Court of the facts and the law"), *modified on other grounds,* 2 Vet.App. at 655; *Libe v. West,* No. 97–541 (Feb. 11, 1998) (single-judge order affording Secretary option in that case of filing statement that "he will rely on the Board of Veterans' Appeals decision in lieu of a brief"); *Dupell v. Derwinski,* 2 Vet.App. 385 (1992) (single-judge order returning Secretary's brief when untimely filed), remanded sub nom. Dupell v. Brown, No. 90–1094, 1993 WL 426384 (Vet.App. Oct. 1, 1993); *Kushindana v. Derwinski,* 2 Vet.

App. 73, 74 (1991) (single-judge order stating that "[w]hile the management of cases and counsel are solely within the province of the Secretary and the General Counsel, ... this case ... may well have to be reassigned" again because of Secretary's numerous extension motions in the case).

Then, on December 1, 1997, the Court transmitted to the Rules Advisory Committee, for its consideration, a proposed amendment to Rule 26(b), effective as to motions filed on or after October 1, 1998, that would generally preclude the granting of extension motions, unless unopposed, based on the demands of a representative's caseload. (The text of that proposed rule is included in the Appendix to this Memorandum and Order.)

Finally, on February 4, 1998, Chief Judge Nebeker held oral argument on the Secretary's fifth extension motion to file a brief in *YQ v. West*, No. 97–1092. On the next day, the Court required the Secretary to file a response by February 19, 1998, to the following question: "If this Court adopts a rule that in six months it will not grant an extension motion based on workload, is the Secretary prepared to take the steps necessary to ensure that records on appeal are designated and briefs are timely filed?" The Secretary provided the following information in a February 19, 1998, response, and coincidentally the Rules Advisory Committee responded to the Court's December 1, 1997, transmittal with its February 19, 1998, proposal.

### III. Secretary's Response

The Secretary reported in his February 19, 1998, response that he has provided $1,000,000 in additional FY 1998 funds to the VA General Counsel group that represents the Secretary before the Court (Professional Staff Group VII (PSG VII)) in order, inter alia, to (1) upgrade computer systems, copying technology, legal research capacity, computer training, and operational training and manuals; (2) hire additional attorneys, paralegals, copy clerks, and law-school students; (3) institute overtime pay, staggered work schedules, and "comp time"; (4) obtain additional work space and establish a new copying center; and (5) take steps to redesign the PSG VII case-tracking system. The Secretary advised that most of these steps had

already been implemented or were well under way and reported the hiring of 15 new or replacement attorneys, four paralegals, and four legal assistants, most of whom had begun work. Finally, the Secretary recounted a budget request for FY 1999 (beginning in October 1998) for additional funds that will add, if appropriated, $1,000,000 to meet further PSG VII workload requirements. The response concluded:

> However, there can be no guarantee that every deadline will be timely met, without exception, if the appellate workload continues its unprecedential growth at unpredictable rates. It is nearly impossible to project organizational needs with certainty some two years into the future as the current budget process would require.
>
> ... It is anticipated that [PSG VII] will be able to meet the current anticipated future challenge if the Congress appropriates the [General Counsel] FY [19]99 budget request.
>
> ... Counsel confidently argues that with the additional funds contained in the [General Counsel] FY [19]99 budget request, the PSG VII staff will significantly reduce its backlog. Also, its practice of seeking extensions, except for good cause, will fall victim to adequate resourcing and improved management practices....
>
> The Acting Secretary represents that he is taking, and will continue to take, every measure reasonably available within appropriated and authorized spending levels to insure that cases are presented timely and professionally to the Court for resolution.

Secretary's February 19, 1998, Response in *YQ*, No. 97–1092, at 9–10.

The Court is encouraged by the Secretary's Response and intends to monitor the situation closely. In that respect, as the Court evaluates the pending Rule 26(b) proposed revisions, periodic reports, as specified in part V, *infra*, will be required from the Secretary on the progress toward the goals set out in his February 19, 1998, Response in *YQ*.

## IV. Future Consideration of Extension Motions

 Over the last several months, as a result of the Court's increasing concern about excessive delays in the completion of appeals and the tendency on the part of many counsel for appellants to object to the Secretary's extension motions, certain factors have emerged in connection with the Court's consideration of such motions as well as of extension motions filed by appellants. The Court intends to consider the following factors, among others, in determining whether extension motions present good cause under Rule 26(b)—whether as to the designation of the ROA, counter designation of the ROA, transmittal of the ROA, or filing of pleadings—and generally to phase in over the next five months closer scrutiny of whether good cause is shown in motions for extensions based on overall caseload demands.

(1) The Court will consider the total record of the timeliness of filings by the moving party as to all filings in the case. Supervisory attorneys, including those for PSG VII, may be held accountable to explain why the attorney of record has become so burdened that he or she is unable to conform with Rule 1.3 of the Model Rules of Professional Conduct (Model Rules) ("A lawyer shall act with reasonable diligence and promptness in representing a client"), adopted as the Court's Code of Professional Responsibility by Rule 1(b) of the Court's Rules of Admission and Practice, 2 Vet.App. XXX (1992). *See* Model Rule 5.1(b), (c) (regarding responsibilities of supervisory attorney to make reasonable efforts to ensure supervised attorney comports with rules of professional conduct); Model Rule 5.1 Comment [1] (supervisory attorney defined).

(2) In evaluating another party's opposition to an extension motion, the Court will take account of the extent to which that party has been granted extensions of time in the case.

(3) If an appellant is represented, the Court expects the moving party to adhere strictly to the requirement in Rule 27(a)(4) to make good faith attempts to contact the opposing representative and to advise the Court whether the motion is opposed and whether or not the opposing party intends to file a response in opposition; where the moving party does not comply with Rule 27(a)(4), the extension motion will be considered to be opposed by the other party.

(4) Where an unrepresented appellant files an objection to an extension motion by the Secretary in a case, the Court will construe that objection as an objection to any further extension motion in that case, and the Secretary will be expected to characterize any further extension motion as "opposed".

## V. Status Reports

On consideration of the foregoing, it is

ORDERED that the pending December 1, 1997, proposal by the Court and the pending February 19, 1998, proposal by the Court's Rules Advisory Committee, to amend Rule 26(b) will be held in abeyance until further order of the Court. It is further

ORDERED that the Secretary file with the Court, and serve on each member of the Rules Advisory Committee, on July 1 and October 1, 1998, supplemental reports as to (a) the current status of all actions taken and projected that were described in the Secretary's February 19, 1998, Response in *YQ, supra,* and (b) any other actions taken and planned by the Secretary and General Counsel to ensure that records on appeal will be timely designated and transmitted and that pleadings, including responses to EAJA applications, will be timely filed. Each status report shall include the number of PSG VII personnel in total and broken down by categories at that point and in comparison to the total and categorical figures at the close of FYs 1994, 1995, 1996, and 1997. The July 1, 1998, report shall include the Secretary's views on the two proposed revisions to Rule 26(b) referenced in the preceding paragraph.

## Appendix

1. December 1, 1997, Item from Court to Rules Advisory Committee

2. February 19, 1998, Recommendation from Rules Advisory Committee to Court

## APPENDIX 1

Memorandum, subject: Item for Rules Advisory Committee, dated December 1, 1997, from the Clerk of the Court to the Chairman of the Rules Advisory Committee:

The Court requests the Committee's consideration of the following change (underlined) to Rule 26(b):

> **(b) Extension of Time.** The Court, on its own initiative or on motion of a party for good cause shown, may extend the time prescribed by these rules for doing any act, or may permit an act to be done after the expiration of such time, but the Court may not extend the time for filing a Notice of Appeal. *Effective with respect to motions for extension of time filed on or after October 1, 1998, the demands of the caseload of a representative of a party will not ordinarily constitute good cause for the granting of such a motion—*
>
> > *(i) unless, in a case where another party is represented, the motion recites that the other part(ies) does(do) not oppose the motion; or*
> >
> > *(ii) unless, in a case where another party is not represented, the other part(ies) does(do) not file an opposition to the motion:*
>
> *Provided, that such a recitation of nonopposition or nonopposition itself will not ensure that such a motion will be granted.*

## APPENDIX 2

UNITED STATES COURT OF VETERANS APPEALS RULES ADVISORY COMMITTEE PROPOSED RULES AMENDMENTS

Approved for transmittal to the Court on February 18, 1998, by a vote of 6 in favor and 3 opposed.

### RULE 26. COMPUTATION AND EXTENSION OF TIME

**(b) Extension of Time.** The Court requires the timely filing of all papers within the period of time allowed by the rules. Requests for extensions of time are not favored and shall only be granted in the case of extraordinary circumstances constituting good cause shown.

**(1) Motions for Extension of Time.** Any motion to extend the time prescribed by the rules or by order of the Court for doing any act must be made at least 7 days before the date sought to be extended. If appellant is represented, the movant must comply with Rule 27(a)(4). Service of the motion must be made by personal service, express delivery, or by facsimile followed by mail service. Requests for extensions of more than 14 days ordinarily will not be granted, except under the circumstances set forth subsection (2)(C) of this Rule. A party opposing an extension must do so promptly upon learning of the request for that extension.

**(2) Grounds That May Merit Consideration.** In ruling on any motion for extension of time, the following grounds may constitute good cause shown:

(A) The matter under appeal is so complex that an adequate brief cannot reasonably be prepared by the date the brief is due;

(B) Extreme hardship will result unless an extension is granted. The nature of the hardship must be set forth in the motion; or,

(C) The motion represents in good faith on behalf of the parties that an extension of time for the performance of any act required by the rules or by an order of the Court is likely to result in a resolution of the case on appeal. In such cases, the Court may grant an extension of up to 30 days.

(D) Representatives of the parties consent to a single extension of time not to exceed 14 days.

(E) A representative has been recently engaged and requires additional time to represent the appellant's interests.

Other grounds may be asserted in the motion. However, neither the demands of the workload of a representative of a party nor administrative delays in processing an appeal shall constitute good cause shown.

**(3) Failure to Meet Deadlines.** The violation of rule or order of the Court for doing any act may be treated by the Court as a contempt of Court. Failure by appellant to process the appeal timely may cause a dismissal for want of prosecution. Failure by the Secretary to comply with any rule or

order of the Court, in particular failure to file a brief in a timely manner, will result in the Court taking any action it deems appropriate, including the granting of the relief sought and awarding of attorneys fees where appropriate as a sanction.

## COMMITTEE COMMENT

It is the opinion of the Committee that the time required to conclude an appeal taken to the Court is excessive. This situation could be remedied, in part, by action on the part of the Court, and the Committee recommends that action be taken.

The Committee believes that under the current rule, the Court already has the power to deny requests for an extension that are based on workload.

Given the long-standing practice of the Court, however, the Committee believes that prior to initiating a stricter policy or rule regarding extensions of time the Court should:

* provide clear standards for applying for and granting extensions of time; and,
* publish its intended action well in advance of an implementation date to permit the VA and practitioners before the Court to adjust their administrative procedures to permit compliance with the new standard.

Additional comment by Committee Members Richard C. Thrasher, Joan E. Moriarty, and Ronald L. Smith are attached.

## APPENDIX

### Memorandum

### Department of Veterans Affairs

Date February 17, 1998

From: Richard C. Thrasher

Subj: Proposed Rule 26 Amendment

To: J. Michael Hannon

1. In regard to the proposed change to Rule 26 of the Court's Rules of Practice and Procedure, I am opposed to this rule change.

The reasons for my opposition are set forth in the following commentary.

2. As indicated in the Committee Comment to the proposed rule change, the Committee believes that, under current Rule 26(b), the Court already has the power to deny requests for an extension of time that are based on the heavy workload of a representative of a party. I fully agree with this comment and do not believe that the proposed rule change is necessary in order to enable the Court to deal with the problem of multiple extension requests. If the Court determines that "good cause" has not been shown for an extension of time, it can, under the current rule, simply deny the request. (The Court also has the power under Rule 31(b) to take "appropriate action" if the Secretary fails to file a brief or other response.) The proposed rule change gives the Court no additional power or authority which it does not already have and, therefore, the proposed change appears to be superfluous.

3. The only significant benefit which would occur if the Court were to adopt either the Committee's proposed amendment to Rule 26 or the initial amendment forwarded to the Committee for consideration by the Court, would be to place practitioners on advance notice that the demands of the caseload of a representative of a party will no longer ordinarily constitute good cause for the granting of an extension of time. Such advance notice, however, does not necessarily need to be provided by way of a proposed rule change. Instead, the Court could simply provide such notice in a precedent opinion or order ruling on a request for an extension of time. *See, e.g., United States v. Raimondi*, 760 F.2d 460, 462 (2nd Cir.1985) ("The movant, and all those who practice before this Court, should consider themselves on notice that motions to extend time to file briefs will be carefully scrutinized, and denied unless good cause is shown.") Such an opinion or order could include the language from part (b) of the proposed rule which indicates that the Court requires the timely filing of all papers within the period of time allowed by the rules, and that requests for extensions of time are not favored and will only be granted in future

cases under extraordinary circumstances for good cause shown.

4. I also am opposed to the proposed rule change due to my significant concerns with the language included in part (b)(3) of the proposed rule which sets forth the remedies available to the Court for failure to meet the Court's deadlines. In particular, I am concerned with the part of the proposed rule which provides that the failure of the Secretary to file a brief in a timely manner "will result in the Court taking any action it deems appropriate, including the granting of the relief sought and awarding of attorneys fees where appropriate as a sanction." While the Court clearly has the power or authority under 38 U.S.C. § 7261(a)(2) to "compel action of the Secretary unlawfully withheld or unreasonably delayed," a review of that entire statutory provision does not appear to reveal that the Court has the power to grant relief and award VA benefits as a penalty for the Secretary's failure to comply with the Court's Rules of Practice and Procedure. Instead, a review of section 7261 reveals that the Court of Veterans Appeals is a Court of limited jurisdiction that, in part, only has the power to "hold unlawful and set aside" the findings of fact made by the Board of Veterans' Appeals when such findings are "clearly erroneous". 38 U.S.C. § 7261(a)(4). The limited nature of the Court's jurisdiction is further emphasized by the provision in section 7261© indicating that "[i]n no event shall findings of fact made by the Secretary or the [Board] be subject to trial de novo by the Court." Further, the Court itself stated in one of its earliest opinions that "[i]t is *not* the function of this Court to decide whether a veteran was injured or whether any such injury occurred in or was aggravated during military service; rather, it is the function of this Court to decide whether such factual determinations made by the BVA in a particular case constituted clear error." *Gilbert v. Derwinski*, 1 Vet.App. 49, 53 (1990) (emphasis in original). Similarly, the Court has stated that *the burden is on the appellant to* establish that the Board's fact-finding was clearly erroneous. *Zink v. Brown*, 10 Vet. App. 258, 259 (1997) (per curiam). Accord-

ingly, for these reasons, it does not appear that the Court has the authority to grant the benefit sought as a remedy for the Secretary's failure to file a brief.

5. Moreover, the Court recently commented in *Malone v. Gober*, 10 Vet.App. 539, 542 (1997), that "where the remedy sought is a monetary award against the U.S. Government, and particularly where Congress has enacted an intricate and all-encompassing statutory scheme, such expenditures must be specifically authorized by statute." In the context of the proposed default remedy for the Secretary's failure to file a brief, this comment would appear to be particularly relevant in that there could be circumstances in which the Secretary fails to file a brief in a timely manner and the Court proceeds to award the benefits sought, even though the appellant clearly may not be entitled to those benefits under the governing statutes and regulations. As further noted by the Court in *Malone*, however, "Congress has created a comprehensive statutory scheme for the payment of veterans' benefits and this Court has recognized the limited nature of our power to create remedies not specifically authorized by Congress." *Id.*, at 543; *see also McCay v. Brown*, 106 F.3d 1577, 1581 (Fed.Cir.1997) ("Although equitable estoppel is available against the government, it is not available to grant a money payment where Congress has not authorized such a payment or the recipient doesn't qualify for such a payment under applicable statutes.")

6. Finally, in regard to the question of what remedies are available to the Court for addressing a parties' failure to file a brief other than granting the relief sought, it is noted that Chief Judge Nebeker recently appeared to signal one possible answer to that question in *Libe v. West*, No. 97–541 (U.S.Vet.App. Feb. 11, 1998) (unpublished order). In that order, the Court grants the Secretary's fourth motion for an extension of time to file a brief until March 6, 1998, but the order further specifically provides that the Secretary will either file a brief by that date "or a statement that, in this particular case, he will rely on the Board of Veterans' Appeals' decision in lieu of a brief."

## APPENDIX

Department of Veterans Affairs
Office of General Counsel
Washington DC 20420

Dear Mr. Hannon:

After lengthy consideration of the proposed rewriting of Rule 26(b), I vote against this change to the current rule. My comments follow.

As Chief Judge Nebeker noted in his letter to you of February 2, 1998, the "press of other cases" has made it necessary for the Secretary to seek extensions in cases. While the need for such extensions is regrettable, it reflects a current reality confronting this office, one which the Acting Secretary has acknowledged and is addressing. While the Court is seeking means to prompt timely filing by the Secretary, I believe that it can take appropriate action within the scope of the current rule, including Rule 31(b). Pursuant to Rule 31(b), the Court has taken action, such as deciding an appeal on the record without the Secretary's brief, where the Secretary does not make timely filings. See, e.g., *Dupell v. Derwinski*, 2 Vet.App. 385 (1992) (The Secretary's brief was returned where it was not timely filed and the Court remanded the appeal based upon the record.). I note that Chief Judge Nebeker has recently suggested a means by which the Secretary could file a pleading relying on the BVA decision in lieu of a brief "in this particular case" (*see* Order dated February 11, 1998, *Diosdado B. Libe, 97–541* (copy attached)); such summary treatment of appropriate cases will be explored as an additional method to dispose of cases in a timely manner. Professional Staff Group 7 continues to address this problem on many fronts, including increasing personnel and supplementing our equipment within the constraints of the budgetary process. A pronouncement, whether at the Court's upcoming Judicial Conference, or in the context of a precedential decision, may serve as a more effective method of communicating the Court's intention to enforce strictly its rules currently in effect.

Should the Court decide to adopt the proposed Rule 26(b), I would strongly recommend amending Rule 31(a) to allow the Secretary 60 days within which to file his brief. The current practice of the Court's Central Legal Staff, at the time of briefing conferences, is to postpone the filing date for appellant's brief for an additional 30-45 days after the date appellant's brief was originally due. This proposed change to Rule 31(a) would likewise give the Secretary 60 days to respond. Additionally, I note that the proposed Rule 26(b)(3) grants the Court discretionary authority to take action should an appellant fail to process an appeal timely (such failure "may" result in the Court taking action) but requires that the Court "will" take action should "the Secretary [fail] to comply with any rule or order of the Court." I suggest that discretionary language be used consistently in this section.

I would also suggest that the proposal of service of motions for extension of time by "personal service, express delivery, or by facsimile followed by mail service" be revisited in light of the impracticalities of such service on unrepresented veterans who may live outside of the United States or may not be able to receive such express mail. The language of the proposed Rule 26(b) may also require revisions of the current Rule 25(d) (permitting service of motions by mail).

Other rules which may require revision in light of the terms of the proposed rule include Rule 31(b) and 10© (generally, in unrepresented cases more than 30 days are required within which to make a "good faith attempt" to resolve a record dispute). In the alternative, the revised Rule 26(b) could be drafted to exclude the record development process.

Thank you for this opportunity to provide commentary.

Joan E. Moriarty

## APPENDIX

**DAV DISABLED AMERICAN VETERANS**

*Building Better Lives for America's Disabled Veterans*

February 17, 1998

VIA TELECOPIER

J. Michael Hannon, Esq.
Thompson, O'Donnell, Markham,
Norton & Hannon
The Southern Building
805 Fifteenth Street, N.W., Suite 705
Washington, DC 20005–2216

Dear Mike:

Thank you for your February 10, 1998, fax regarding the proposed amendment to U.S.Vet.App.R. 26. Although the present draft has much to commend it, it fails to address both aspects of the problem. I therefore vote against recommending this rule to the Court in its present form.

The Court is confronted with a two-pronged problem. It does not exercise exclusive control over its docket, and it has not identified any effective action which it can take in the event VA fails to file a pleading within the time allowed. The draft rule addresses the first prong but not the second. If adopted, the amended rule would give the Court the opportunity to deny a motion for extension of time by allowing it to decide the motion before the time expired. However, it falls short of suggesting to the Court an appropriate remedy in the event a VA motion is denied and VA fails to file its pleading.

The parties, and not the Court, effectively grant their own extensions of time in accordance with the practice that has developed under the existing rule. Parties frequently file motions for extension on the date their pleading is due. Such motions may be acted upon by the Clerk within a few days if unopposed. If opposed, the motion may not be decided for several weeks. In either event, the mere act of a party filing a motion on the last day has the effect of extending the time allowed. I am unaware of the Court having denied such a motion. To this extent the parties, and not the Court, control the Court's docket. Paragraph (b)(1) of the proposed rule addresses this issue.

The Court could not, even under the new rule, reasonably deny a VA motion for extension of time unless it was confident an appropriate remedy was available should VA fail to file its brief or other pleading. The rules presently provide, as does the proposed amendment, that if an appellant fails to file a brief then his or her appeal may be dismissed. U.S.Vet.App.R. 31(b). The Court has generally, but not uniformly, issued a show cause order in cases where an appellant has failed to file a timely brief. This practice seems entirely proper. However, with respect to the Secretary's failure to "file a brief the present rule provides only that the Court may take appropriate action." The proposed amendment incorporates similar language and goes on to state "including the granting of the relief sought and awarding of attorneys fees where appropriate as a sanction." Both of these possibilities should remain available to the Court for use in extreme cases. However, there are other less harsh actions the Court could take if VA should fail to file a brief or other pleading.

The Court is not uninformed with respect to VA's view of a case simply because the Government fails to file a brief. The decision of the Board of Veterans' Appeals is required to provide "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record." 38 U.S.C.A. § 7104(d)(1) (West 1991). The Board must consider all "applicable provisions of law and regulation" in performing this task. 38 U.S.C.A. § 7104(a) (West Supp.1997). In a case where VA failed to file a brief within the time allowed the Court could order the appeal submitted for decision based on the appellant's brief and the Board's decision. The Secretary could be deemed to have waived his right to file a brief, and the Court could decide the appeal on its merits without the need to either rule against the Government by default or impose monetary sanctions against the Secretary. Such a rule would have the additional advantage of putting VA on notice, as appellants are, of how its failure to follow the rules would be treated. I would not urge the Court to take even this action without first issuing an order directing the Secretary to show cause why he should he precluded from filing a brief.

I support the following in place of paragraph (b)(3) as contained in the Committee draft.

442

(3) Failure to Meet Deadlines. The violation of any rule or order of the Court for doing any act may be treated by the Court as a contempt of Court. Failure by [an] appellant to process the appeal timely may [result in] dismissal for want of prosecution. Failure by the Secretary to comply with any rule or order of the Court, in particular failure to file a brief in a timely manner, will result in the Court taking any action it deems appropriate, including [submitting the appeal for decision on the basis of the Board's decision and] or awarding of attorneys fees where appropriate [].

In addition to the foregoing, I would also recommend to the Court that the last sentence of paragraph (b)(2)(C) of the draft rule be replaced with the following. "In such cases, the Court may grant extensions as requested by the parties." It is frequently the case that VA needs more than thirty days to obtain the approvals necessary before it agrees to a motion for remand or a settlement. In such a case it is in the interests of the Court and the parties that the appeal be resolved without further litigation.

The word "single" should be deleted from paragraph (b)(2)(D) of the draft rule. The Court should not be required to expend judicial resources deciding unopposed motions for short extensions. The Clerk should continue to decide these motions.

Sincerely,

Ronald L. Smith, Esq.