Citation Nr: 1602953 
Decision Date: 01/29/16 Archive Date: 02/05/16

DOCKET NO. 13-34 216A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Medical Center in Lexington, Kentucky


THE ISSUE

Entitlement to payment of or reimbursement for private medical expenses for services performed on July 18, 2012, and July 19, 2012, at James B. Haggin Memorial Hospital.


ATTORNEY FOR THE BOARD

A. Barone, Counsel


INTRODUCTION

The Veteran served on active duty from September 1981 to September 1985 and from January 1989 to December 1992.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2012 administrative decision by the Department of Veterans Affairs (VA) Medical Center (VAMC) in Lexington, Kentucky. This matter was previously before the Board in September 2015, when it was remanded for additional development of the record.


FINDINGS OF FACT

1. The Veteran received private medical treatment from James B. Haggin Memorial Hospital on July 18, 2012 and July 19, 2012, for a right arm abscess unrelated to any service-connected disability (the Veteran has no adjudicated service-connected disabilities).

2. The medical treatment provided at a non-VA medical facility on July 18, 2012 and July 19, 2012 was not formally authorized by VA.

3. The Veteran's symptoms at the time did not constitute a medical emergency of such an order that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health.


CONCLUSION OF LAW

The criteria for establishing entitlement to payment or reimbursement of private medical expenses by VA are not met for treatment the Veteran received at a non-VA facility on July 18, 2012 and July 19, 2012. 38 U.S.C.A. §§ 1725, 1728, 5107 (West 2014); 38 C.F.R. §§ 3.102, 17.52, 17.120, 17.121, 17.1000-17.1008 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

The VCAA, codified in part at 38 U.S.C.A. §§ 5103, 5103A, and implemented in part at 38 C.F.R § 3.159, amended VA's duties to notify and to assist a claimant in developing information and evidence necessary to substantiate the claim. 

The Veteran was provided a VCAA notice letter in August 2012 (as an attachment to the notice of the administrative determination at issue) and again in November 2013 (along with notice of the statement of the case). Although these letters were sent along with notices of adjudications in this matter, these letters were sent well prior to the most recent readjudication and issuance of a supplemental statement of the case in April 2014; the notice letters were thus effectively timely. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). The notice generally advised the Veteran of VA's duties to notify and assist, and of his duties to provide evidence or information to substantiate his claim.

Further, VA undertook to determine the Veteran's eligibility for payment or reimbursement of medical expenses incurred at James B. Haggin Memorial Hospital on July 18th and 19th of 2012, including development of the evidentiary record completed in accordance with the Board's September 2015 remand directives, as discussed below. Therefore, considering such notifications and what VA has done and would do if the requested evidence was received from the Veteran, the Board finds that no further action is necessary under the statutory and regulatory duties to notify and to assist.

The Board also finds that the actions directed by the Board's September 2015 remand have been completed in substantial compliance with those directives. See Stegall v. West, 11 Vet. App. 268 (1998). The notification letters regarding pertinent administrative determinations in this case are now available for review in the claims-file. The April 2014 supplemental statement of the case notes that the Veteran was contacted and provided the pertinent information in his possession regarding his reported contact with VA on the dates in question. The Veteran's VA treatment records from July 2012 pertinent to his case have been made available for review in the claims-file.

Legal Criteria, Factual Background, and Analysis

The Veteran's appeal seeks reimbursement for expenses for private medical treatment performed on July 18, 2012 and July 19, 2012, at James B. Haggin Memorial Hospital. The Veteran argues, in essence, that the treatment he received was obtained with the approval of his VA medical provider / the VAMC such that VA should take responsibility for payment for the treatment. The Veteran argues that at least the first of the two private treatment visits was undertaken under the circumstances of a medical emergency such that VA reimbursement should be warranted even if the treatment is not found to have been authorized by VA.

Initially, the Board notes that it has reviewed all of the evidence in the Veteran's claims file (including, in particular, the special medical reimbursement claim folder), with an emphasis on the evidence relevant to this appeal. Although the Board has an obligation to provide reasons and bases supporting its decision, there is no need to discuss, in detail, every piece of evidence of record. Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000). Hence, the Board will summarize the relevant evidence as appropriate and the Board's analysis will focus specifically on what the evidence shows, or fails to show, as to the claim.

In claims involving payment/reimbursement by VA for medical expenses incurred for treatment at a private facility, it must first be determined whether the services for which payment is sought were authorized in advance by VA. 38 U.S.C.A. § 1703(a); 38 C.F.R. § 17.54; see also Malone v. Gober, 10 Vet. App. 539, 541 (1997). This is a factual, not a medical, determination. Similes v. Brown, 6 Vet. App. 555, 557 (1994). If payment was not pre-authorized, the analysis then proceeds to whether payment or reimbursement for the non-preauthorized services is warranted.

When VA facilities are not capable of furnishing the care or services required, VA may contract with non-Department facilities in order to furnish certain care, including hospital care or medical services for the treatment of medical emergencies which pose a serious threat to the life or health of a Veteran receiving medical services in a Department facility until such time following the furnishing of care in the non-Department facility as the Veteran can be safely transferred to a Department facility. 38 U.S.C.A § 1703(a)(3); 38 C.F.R. § 17.52(a)(3).

The provision of medical services to a Veteran by a non-VA provider at the expense of VA and under the provisions of 38 U.S.C.A § 1703 must be authorized in advance. 38 C.F.R. § 17.54 (2015); Malone v. Gober, 10 Vet. App. 539 (1997). In the case of an emergency that existed at the time of hospital admission, an authorization may be deemed a prior authorization if an application is made to VA within 72 hours after the hour of admission. 38 C.F.R. § 17.54.

After the VAMC denied the request for payment of the medical services at issue, the Veteran explained his contentions in a December 2012 notice of disagreement. Therein, the Veteran stated: "I called VA before I went to the Emergency Room. This was deemed an emergency. My arm was turning purple really red and the pain was so unbearable. I was sweating and dizzy. The VA told me to go onto the Emergency Room in Harrodsburg...." The Veteran further recounts: "I then called [a VA nurse who] told me I could go to the VA for a follow-up or go back to Harrodsburg Hospital for a follow-up. So I did." The Veteran contends that he would not have gone to the private hospital if he had not believed that VA would cover the expense.

After the Veteran's claim was denied again in connection with the issuance of the November 2013 statement of the case, the Veteran submitted a VA Form 9 in December 2013 that presented another statement of his recollection of the pertinent events. In his December 2013 statement, the Veteran recalls: "I was injured very badly. I woke up and my arm which was bitten by an insect (spider probably) was turning purple[.] I was scared. I was sweating very badly in bed. My arm was really hurting." The Veteran continues to assert: "I wasn't able to drive to Lexington, Ky VA which is 35 miles away. I was thinking that it might have a blood clot in my arm. So to me I deemed it necessary to go to the emergency room."

The Board notes that the December 2012 and December 2013 statements differ. Whereas the Veteran's December 2012 statement asserted that he called VA before seeking emergency treatment and was instructed to go to his local private emergency room, the December 2013 statement describes that the Veteran made the decision to go to the local emergency room (and called VA after the first visit was concluded). The Board here briefly observes that the second version of events concerning the Veteran's contact with VA is more consistent with VA's own documentation of the Veteran's contact at that time (discussed in detail below).

The Veteran goes on to describe that following the first emergency room visit: "The next day I called the Lexington VA and told them I had to do a follow up. They told me I could go there Harrodsburg Hospital or go to VA. So I chose to go closest to my house." The Veteran argued: "I have used the VA numerous times. But this was an emergency on my arm. I could have did my follow up at the VA. But I did call an[d] they gave me the option." The Veteran further expressed that "I'm not working and don't have a job to pay for this. I have diabetes bad and a torn rotator cuff that needs surgery." The Veteran also suggested that he believed that he had been misinformed by VA to his detriment in this matter, urging: "If you have someone answer the phone be sure they give the right information."

The Veteran's pertinent VA medical records from the month of July 2012 were obtained in accordance with the Board's September 2015 remand. The obtained records feature documentation of the Veteran calling VA on July 18th, after the first instance of private medical treatment at issue. The report of this call notes: "vet states he went to local ER and had bug bite lanced. [T]old to follow up with PC provider in 2 days and needs to know about tetanus injection...." The note includes an instruction for the appropriate VA nurse practitioner to return the Veteran's call. The record includes documentation of the return call: "Advised pt that we would need his ER records for review before we could schedule him an appt. Further advised him that he had his last Tetanus shot in 11-2011." The report notes the Veteran's response: "He states, 'I can just go back up there to the ER for f/u [follow up] in a couple of days. I was worried about my tetanus shot, but I'm ok on that.'" The report of the call concludes: "Advised pt to call us back if he changed his mind."

The VAMC's April 2014 supplemental statement of the case notes that the Veteran was contacted in October 2015 for the purpose of inquiring as to the name of the person at VA he recalled speaking to when he believed he received the alleged VA authorization for the private treatment; the Veteran replied that the only information he could recall is that he believed he spoke to someone named "Pat." The Board notes that VA's documentation of the pertinent July 2012 contact with the Veteran indicates that his initial call to VA was handled by a staff nurse named "Patricia," thus suggesting that the VA documentation of this contact does correspond to the contact the Veteran seeks the Board to consider in deciding this claim. The second call (VA calling the Veteran back) was made by another VA nurse.

Aside from the evidence discussed above, there is no documentation otherwise suggesting VA authorization of the private medical care for payment or reimbursement purposes. The essential question is whether either VA nurse's contact/discussion with the Veteran constitutes VA authorization for private medical services. It is important to note that the advice of a doctor or a nurse to go to a non-VA hospital is not the specific type of authorization contemplated by the regulation. Smith v. Derwinski, 2 Vet. App. 378, 378-79 (1992), citing 38 C.F.R. § 17.50d (1) (1991), which has been recodified as 38 C.F.R. § 17.54 (see Medical; Nonsubstantive Miscellaneous Changes; 61 Fed. Reg. 21,964 (May 13, 1996)).

Accordingly, the documentation of the VA nurse's contact with the Veteran presents no suggestion of the specific type of authorization at issue here. Indeed, even if the Veteran's first account of events (in which he described being advised over the phone to go to the local emergency room) were to be accepted, this would still not appear to describe the specific formal type of notice contemplated by the regulation. The Veteran's revised account and the VA documentation of record reflect that there was no pertinent contact between the Veteran and VA prior to the initial visit to the private facility on July 18, 2012. The Veteran's first call to VA during the pertinent time informed VA that he had already just been to his local emergency room, and there is no suggestion in the report that a specific authorization for payment purposes was provided (neither for the already-completed private treatment nor for the coming follow-up).

Additionally, the documentation of the contact reflects that a VA nurse returned the Veteran's call to notify him that he needed to provide VA with the emergency room visit records so that VA could schedule him for a follow-up appointment at the VA facility; the report reflects that the Veteran declined the VA appointment, and that he asserted "I can just go back up there to the ER for f/u in a couple of days." The VA nurse acknowledged the Veteran's preference, but there is no suggestion in the report of any discussion of formal authorization with regard to payment/reimbursement. The Board is unable to find that the VA nurse's acknowledgement of the Veteran's preference to visit the private facility nearer to his home constitutes a manner of formal VA approval of the non-VA treatment for the purposes of assuming responsibility for its payment.

Significantly, the Veteran has not otherwise asserted that the private treatment in question was formally authorized by VA. Rather, the Veteran's argument rests upon the asserted belief that the VA nurse practitioner authorized the non-VA treatment such that VA assumed responsibility for its payment. As noted above, the Veteran's statements also suggest that he believes that he acted to his detriment (by incurring the cost of the private medical treatment) due to the fact that the VA nurse did not clearly explain that VA would not pay for his preferred non-VA medical treatment. The Board is unable to agree with the argument presented by the Veteran. The Board finds no indication in the record nor in the Veteran's contentions that VA provided the Veteran with the specific type of authorization contemplated by 38 C.F.R. § 17.54; again, the VA nurse's advice, agreement with, or acknowledgement regarding the Veteran's decision to pursue treatment with a non-VA provider does not constitute the type of authorization needed to establish entitlement to the payment / reimbursement sought under these provisions. The Board is otherwise unaware of (and the Veteran does not identify) any legal or regulatory provision that entitles the Veteran to VA payment / reimbursement of his private medical expenses on the basis of VA medical staff not explaining that VA would not pay for unauthorized non-VA medical treatment when the Veteran elected to pursue private treatment.

There is no indication of record, and there is no specific assertion in the Veteran's contentions, that any VA personnel told the Veteran that VA would assume responsibility for the private medical treatment at issue in this case. Rather, the Veteran's contentions suggest that he was told that he "could go to" either a private or VA facility, and he inferred from this that VA would pay for his choice of private treatment. The Board sympathizes with the Veteran to the extent that his statements suggest he was confused regarding VA's policy and obligations with respect to payment for the pertinent private medical care, and that he did not understand the requirement that he obtain a formal authorization; however, his confusion does not present a legal basis for the award of payment in this case. The Veteran does not identify (and the Board is not otherwise aware of) any legal basis or authority providing for the award of payment / reimbursement in this case arising from the Veteran's confusion or uncertainty concerning pre-authorization of the non-VA treatment. Likewise, the Veteran does not identify (and the Board is not otherwise aware of) any legal basis or authority providing for the award of payment / reimbursement in this case arising from the manner in which the VA nurse practitioner assisted the Veteran with his request for information about his tetanus shot history and for potentially arranging the VA medical appointment that he ultimately declined.

Under the applicable laws and regulations, the facts cited by the Veteran in this case do not constitute VA authorization for the purposes of establishing entitlement to payment for the pertinent medical treatment obtained at a non-VA medical facility, nor do the facts cited by the Veteran otherwise substitute for such authorization or otherwise eliminate the requirement to obtain such authorization.

For the reasons stated above, the Board must conclude that prior authorization was not obtained pursuant to 38 C.F.R. § 17.54 for the private medical treatment received on July 18, 2012, and July 19, 2012, and that such authorization is not warranted for expenses incurred in conjunction with that treatment under 38 U.S.C.A. § 1703. The regulation clearly states that authorization for treatment must be received in advance or, in the case of an emergency, care may be considered authorized if an application is received within 72 hours of treatment. The evidence does not indicate that authorization for the treatment at issue was received in advance (or within 72 hours following treatment).

To the extent the Veteran presents arguments invoking what amounts to entitlement on an equitable basis (i.e., a sense of fairness and just due), the Board understands the Veteran's contentions that he feels misled by VA personnel and that he faces financial and medical hardships that make the medical expense at issue a substantial burden to him. However, the Board is without authority to grant benefits simply because it might perceive such a grant to be equitable. See 38 U.S.C.A. §§ 503, 7104; see also Harvey v. Brown, 6 Vet. App. 416, 425 (1994). The Board further observes that "no equities, no matter how compelling, can create a right to payment out of the United States Treasury which has not been provided for by Congress." Smith (Edward F.) v. Derwinski, 2 Vet. App. 429 (1992) citing Office of Personnel Management v. Richmond, 496 U.S. 414 (1990).

Accordingly, the Board will proceed to consider whether the Veteran is eligible for payment or reimbursement for services not previously authorized. See Hennessey v. Brown, 7 Vet. App. 143 (1994).

Where a veteran receives treatment at a non-VA facility without prior authorization, there are two statutes that provide for payment or reimbursement for the medical expenses thus incurred: 38 U.S.C.A. §§ 1725 and 1728. Which statute applies is generally dependent on whether he has an adjudicated service-connected disability. 

In this case, reimbursement under 38 U.S.C.A. § 1728 is not warranted because the Veteran does not have any established adjudicated service-connected disabilities, does not have a total disability rating associated with service-connected disability, and has not alleged that the abscess is in any manner related to any VA vocational rehabilitation program.

The private medical records from James B. Haggin Memorial Hospital documenting the Veteran's July 18, 2012 visit note a "chief complaint" of "abscess" of the "R[ight] antecubital." The abscess was described to be "3x3 cm" with a surrounding "red area" of "10 x 12 cm." The reported time on onset was "2 days" prior to the visit. The report notes that the Veteran had blood drawn 2 weeks prior. Physical examination notes include indication that the Veteran was "Ill Appearing," but the box to indicate whether he was significantly "In pain" was not marked; this suggests he was not in apparent painful distress at the time. An assessment form from this visit shows that the Veteran's pain level was assessed as "4" or "5" out of 10. The report indicates that the Veteran's discussion of onset indicated that the abscess appeared 2 days prior, and the Veteran was "unsure of injury or insect bite." The report notes that the Veteran attempted to treat the abscess himself by draining it with a needle at home. The Veteran was assigned a "Triage Category" of "Urgent," but not "Emergent." A written description associated with the visit indicates that the Veteran was complaining of a "'bite' getting worse," and that he had used an insulin needle at home to attempt to drain it and "was able to get some draining out but got worse...." The abscess was treated with a half-inch incision for drainage, a culture was ordered, a prescription was provided, and the Veteran was advised to follow-up with his primary care physician in "1-2 days."

The Board notes that the documentation of this July 18, 2012 visit presents no suggestion that the Veteran or anyone else suspected that the abscess may represent a blood clot; the abscess was repeatedly described as appearing to be an insect bite, apparently including in the Veteran's own presentation of his medical complaint / concern. The Board also observes that the documentation of the July 18, 2012 evaluation does not note any significant dizziness or sweating symptomatology. The Veteran was noted to be oriented and alert; the report appears to show that the Veteran was not perceived to be "Anxious" at the time, as a box to indicate "Anxious" in a completed section of an assessment form was left unmarked.

The private medical records from James B. Haggin Memorial Hospital documenting the Veteran's July 19, 2012 visit notes a "chief complaint" of "wound check" of the same antecubital site. It noted the recent prior visit, described the site, and noted the culture associated with the wound check procedure. A nursing assessment form rated the Veteran's pain level as "7" out of 10. The "Triage Category" was classified as "Semi-Urgent," and not "Emergent." The documentation describes that the Veteran "reports area appeared as red, painful pustule 4 days ago." Active drainage of the site following the prior visit's incision was observed. The Veteran explained that he had returned to the clinic because he "was told to follow up today." The Veteran denied any other complaints at that time. The Veteran was discharged with instructions for care of the wound site.

38 U.S.C.A § 1725(a) provides that VA shall reimburse certain veterans for the reasonable value of emergency treatment furnished the veteran in a non-Department facility. Under 38 U.S.C.A § 1725(b), eligibility requires:

(1) the veteran is an active VA health-care participant, which means he is enrolled in the health care system established under section 1705(a) and received care within the 24-month period preceding the furnishing of such emergency treatment; and
(2) the veteran is personally liable for payment, which means he is financially liable to the provider of emergency treatment for that treatment, has no entitlement to care or services under a health-plan contract, has no other contractual or legal recourse against a third party that would, in whole, extinguish such liability to the provider, and is not eligible for reimbursement for medical care or services under 38 U.S.C.A. § 1728.

The implementing regulation of the statute is 38 C.F.R. § 17.1002, which provides that payment or reimbursement for emergency services for nonservice-connected disabilities in non-VA facilities is made only if all [emphasis added] of the following are met:

(a) The emergency services were provided in a hospital emergency department or a similar facility held out as providing emergency care to the public;

(b) The claim for payment or reimbursement for the initial evaluation and treatment is for a condition of such a nature that a prudent layperson would have reasonably expected that delay in seeking immediate medical attention would have been hazardous to life or health (this standard would be met if there were an emergency medical condition manifesting itself by acute symptoms of sufficient severity (including severe pain) that a prudent layperson who possesses an average knowledge of health and medicine could reasonably expect the absence of immediate medical attention to result in placing the health of the individual in serious jeopardy, serious impairment to bodily functions, or serious dysfunction of any bodily organ or part);

(c) A VA or other Federal facility/provider was not feasibly available and an attempt to use them beforehand would not have been considered reasonable by a prudent layperson (as an example, these conditions would be met by evidence establishing that a veteran was brought to a hospital in an ambulance and the ambulance personnel determined that the nearest available appropriate level of care was at a non-VA medical center);

(d) At the time the emergency treatment was furnished, the veteran was enrolled in the VA health care system and had received medical services under authority of 38 U.S.C. chapter 17 within the 24-month period preceding the furnishing of such emergency treatment;

(e) The veteran is financially liable to the provider of emergency treatment for that treatment;

(f) The veteran has no coverage under a health-plan contract for payment or reimbursement, in whole or in part, for the emergency treatment (this condition cannot be met if the veteran has coverage under a health-plan contract but payment is barred because of a failure by the veteran or the provider to comply with the provisions of that health-plan contract, e.g., failure to submit a bill or medical records within specified time limits, or failure to exhaust appeals of the denial of payment);

(g) If the condition for which the emergency treatment was furnished was caused by an accident or work-related injury, the claimant has exhausted without success all claims and remedies reasonably available to the veteran or provider against a third party for payment of such treatment; and the veteran has no contractual or legal recourse against a third party that could reasonably be pursued for the purpose of extinguishing, in whole, the veteran's liability to the provider; and

(h) The veteran is not eligible for reimbursement under 38 U.S.C. 1728 for the emergency treatment provided (38 U.S.C. 1728 authorizes VA payment or reimbursement for emergency treatment to a limited group of veterans, primarily those who receive emergency treatment for a service-connected disability). 38 C.F.R. § 17.1002.

Notably, the provisions in 38 C.F.R. § 17.1002 are stated in the conjunctive, not disjunctive; that is, all of the enumerated criteria must be met. See Melson v. Derwinski, 1 Vet. App. 334 (1991) (use of the conjunctive "and" in a statutory provision meant that all of the conditions listed in the provision must be met).

The Board notes that changes were made to 38 C.F.R. § 17.1002, in December 2011 that were effective as of January 20, 2012. See 76 Fed. Reg. 79 ,067-79,072 (Dec. 21, 2011). These changes are reflected in this discussion; however, they are not pertinent to this claim.

Further, effective May 21, 2012, VA published a final rule amending 38 C.F.R. § 17.1002 to conform to 2010 statutory changes. See 77 Fed. Reg. 23,615 (April 20, 2012). In the "Supplementary Information" section, addressing public comments to the proposed regulatory amendments, VA acknowledged a commenter's suggestion that VA remove the term "or in part" from the current 38 C.F.R. § 17.1002(f). VA noted that the 2010 statutory changes removed the term "or in part" from 38 U.S.C.A. § 1725(b)(3)(C) (pertaining to contractual or legal recourse against a third party) and that 38 U.S.C.A. § 1725(b)(3)(B) (pertaining to a health-plan contract) had no such revisions. VA stated, "In other words, section 1725(b)(3)(B) requires that the veteran have 'no entitlement to care or services under a health-plan contract,' which means that any entitlement, even a partial one, bars eligibility under section 1725(b)... The current language of § 17.1002(f) clarifies the language of section 1725(b)(3)(B) by reiterating the veteran's liability for emergency treatment if such veteran has no health-plan contract 'in whole or in part.'" VA respectfully declined to make any changes to the regulation based on this comment.

After careful consideration of the applicable law and regulations and the evidence of record, the Board concludes that the Veteran is not entitled to reimbursement under 38 U.S.C.A. § 1725. Specifically, the Board concludes that the care and services not previously authorized were not rendered in a medical emergency of such nature that delay would have been hazardous to life or health.

Instead the record reflects that the Veteran first noticed the abscess two days prior to seeking treatment, and that it had been painful during that time. Although the Veteran's statements in support of this claim assert that by the time he sought treatment the pain "was so unbearable," the medical records from his pertinent private treatment do not support finding that the level of pain presented an emergency. A pain level of "4" or "5" out of 10 was noted when he first presented for treatment on July 18, 2012. The private medical records do not note all of the additional symptoms later recalled by the Veteran, such as significant dizziness and sweating. The private medical records indicate that the Veteran was not found to be "Anxious" and not found to be significantly "In pain" at that time, but was instead noted to be alert and oriented, while appearing ill (according to the selection of pertinent boxes marked on a completed assessment form). The private medical report indicates that the Veteran's need for medical care was "Urgent," and it was not "Emergent" (as noted in the selection of triage status). The private medical report does not suggest that the Veteran or anyone else suspected that the abscess may represent a blood clot or medical concern of greater gravity. The Board finds it reasonable to expect that if the Veteran believed that his health was in peril due to a blood clot in his arm, that this concern (from an alert and oriented patient) would have been presented to the medical providers and noted in the medical reports. Moreover, the Board notes that the Veteran's first (December 2012) statement describing the pertinent events did not include any suggestion that he feared that he had a blood clot, and this testimony was first introduced in his December 2013 statement a year later. This further suggests that a fear of a blood clot was not a significant feature of the Veteran's concerns when seeking medical care on July 18, 2012.

The Board notes that the documentation from the second of the private medical encounters at issue (July 19, 2012) suggests a higher pain level ("7" out of 10) for the treated and draining abscess, but this encounter has been clearly established to have been a follow-up care check-in and is not suggested to have been itself a medical emergency. The report from the second private medical encounter characterizes the triage level as "semi-urgent," and not "emergent." The Veteran 's own statements refer to this second of the two pertinent private medical treatment encounters as "a follow up," suggesting that he was not seeking treatment for an emergent health concern at the time. By this time, the Veteran had already recently received medical evaluation treatment for the abscess, had not reported any new emergency developments, and has argued that he only obtained the follow-up consultation from the private facility (rather than VA) because he believed VA would pay for it (suggesting he would have sought the follow-up from VA if he had understood the payment situation, and that this follow-up treatment was not a medical emergency). The Board also observes that the Veteran appears to have sought the non-emergency follow-up from the emergency room of the hospital (as he had stated to the VA nurse he planned to do), despite the fact that the emergency department had instructed him to seek follow-up from his primary care provider.

Therefore, in regarding the entire account of the facts surrounding the private treatment received by the Veteran performed on July 18th and 19th of 2012, the Board is not persuaded that a prudent layperson would have reasonably found the Veteran's life or health would have been in such danger had there been a delay in immediately seeking the services rendered by James B. Haggin Memorial Hospital. In short, the situation was not a medical emergency as prescribed in the regulations cited above.

The Veteran's arguments have also suggested that it would have been unfeasible for him to drive 35 miles to the VAMC to receive the sought treatment, but this contention is connected to his assertion that the matter was reasonably apparent to be a significant medical emergency. As discussed above, the Board is not persuaded that a prudent layperson would have reasonably found the Veteran's life or health would have been in such danger had there been a delay in immediately seeking the services rendered by James B. Haggin Memorial Hospital. (The review of the evidence also does not persuade the Board that the abscess was debilitating to the Veteran in a manner that rendered him unable to drive to the VA facility, and only capable of going to the local emergency room.) To the extent that a VA facility was feasibly available to provide the treatment at the time, this fact would also prevent the Veteran from being entitled to reimbursement under 38 U.S.C.A. § 1725.) However, regardless of any determination of the feasible availability of a VA facility, the Board's finding that the situation did not present a medical emergency as prescribed in the regulations cited sufficiently resolves the appeal and precludes the award of the sought reimbursement in this case.

In conclusion, a review of the record indicates that the Veteran did not have preauthorization for the treatment received, nor was the treatment rendered in a medical emergency. Therefore, reimbursement is not permitted for the medical expenses incurred in connection with treatment provided by a non-VA medical practitioner on July 18, 2012, and July 19, 2012, at James B. Haggin Memorial Hospital. In reaching this decision, the Board notes that it is bound by the law, and its decision is dictated by the relevant statutes and regulations. Accordingly, the claim must be denied.


ORDER

The appeal to establish entitlement to payment or reimbursement for the private medical services the Veteran received from a non-VA provider on July 18, 2012, and July 19, 2012, at James B. Haggin Memorial Hospital is denied.




____________________________________________
M. C. Graham
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs