# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 03-1432

JACQUELYN M. FRIEDSAM, APPELLANT

V.

R. JAMES NICHOLSON,
SECRETARY OF VETERANS AFFAIRS, APPELLEE

On Appeal from the Board of Veterans' Appeals

(Argued May 17, 2005                              Decided   May 8, 2006   )

*Bernard Englander*, of Washington, D.C., for the appellant.

*Gary O'Connor*, with whom *Tim S. McClain,* General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Acting Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD[1], MOORMAN, and DAVIS, *Judges.*

MOORMAN, *Judge:*  The appellant, Jacquelyn M. Friedsam, appeals through counsel a March 26, 2003, Board of Veterans' Appeals (Board) decision that denied retroactive payment of dependents' educational assistance (DEA) benefits pursuant to 38 U.S.C. § 3501.  Record (R.) at 7-8. She seeks DEA benefits for herself and her three children, Tracey, Jerrilyn, and Alexander Friedsam. In light of potentially dispositive supplemental authority filed by the appellant just prior to oral argument, the Court, on July 19, 2005, issued a 10-day stay in these proceedings to allow the parties to possibly resolve the issues involved in this appeal.  On July 28, 2005, the Secretary filed his response to the July 19, 2005, order and moved for a settlement conference to be conducted by the

---

[1]  Judge Steinberg was a member of the panel that heard oral argument on May 17, 2005. Judge Steinberg retired on August 6, 2005, and was replaced by Judge Kasold as a member of the panel.  Judge Steinberg did not participate in the vote on this opinion.

Court's Central Legal Staff, which motion the Court granted the following day. A settlement conference was conducted on August 17, 2005, and subsequently, the parties moved for a 30-day stay in proceedings to allow for the drafting of a settlement agreement, which stay the Court granted. On September 19, 2005, the Secretary informed the Court that the parties were not able to reach an agreement. The Court will now address counsel for the appellant's motion to intervene and then issue its decision on the merits of the appeal.

## I. MOTION TO INTERVENE

On August 5, 2005, counsel for the appellant filed an opposed motion to intervene in these proceedings on behalf of Tracey, Jerrilyn, and Alexander Friedsam, the appellant's adult children (now ages 41, 37, and 34, respectively). He argues that as provided by Rule 15(a) of the Court's Rules of Practice and Procedure, the Friedsam children "should be considered as constructive participants in the Board proceeding [on appeal] because procedural errors by the Buffalo [New York] Regional Office . . . prevented their participation." Motion to Intervene by Tracey Friedsam, Jerrilyn Friedsam, and Alexander John Friedsam Opposed by Appellee (Mot. to Intervene) at 2. Counsel for the appellant and the Friedsam children maintains that each of the Friedsam children filed a Notice of Disagreement (NOD), requesting therein a Statement of the Case (SOC), as to the Buffalo, New York, VA regional office (RO) decision that denied them, and the appellant, entitlement to retroactive DEA benefits. In addition, he seeks permission for the Friedsam children to intervene under Rule 15(b) of the Court's Rules of Practice and Procedure because their claims for DEA benefits are based on the same questions of law and fact as the appellant's claim, and if intervention is not granted, each of the Friedsam children could obtain a different result despite the similarity of the facts and issues. Mot. to Intervene at 3-5.

Because this motion to intervene was not filed within 60 days of the date of the Clerk's notice of docketing of the appeal, pursuant to Rule 15(c) of the Court's Rules of Practice and Procedure, intervention may be granted only upon a finding of extraordinary circumstances. The Court notes, however, that even if extraordinary circumstances existed in this case, the posture of the Friedsam children's claims does not warrant their intervention.

2

Initially, based on the arguments made by the parties in their briefs and during oral argument, the Court was concerned as to whether the Friedsam children's claims were properly before the Court for review. In her briefing to the Court, the appellant asserted that the RO issued only one decision regarding entitlement to DEA benefits, despite each individual's having submitted a separate application for DEA benefits outlining their respective educational pursuits. Appellant's Brief (App. Br.) at 7-8. In addition, she argued that each of the Friedsam children filed separate NODs in which each child requested a separate SOC that the RO then failed to issue. Because of the resulting lack of clarity in the record on appeal (ROA), including statements in the RO decision, the SOC, and the Board decision referring to the four DEA claims together and also Mrs. Friedsam's claim separately, the appellant addressed all of the claims in her arguments to "preserve [the Friedsam children's] rights to DEA benefits." *Id.* at 11. The Secretary, in his brief, argued that the Friedsam children were not prejudiced by the RO's failure to issue separate SOCs since those SOCs would address the same issue: entitlement to DEA benefits; he also maintained that a remand was warranted for the Board to address a possible informal claim for DEA benefits for Jerrilyn Friedsam arising from Mrs. Friedsam's original application for dependency and indemnity compensation (DIC). Secretary's Brief (Sec'y Br.) at 15, 18-20. In order to allow the parties time to discuss these possible procedural defects and a potential settlement agreement as to the claims implicated by both parties, the Court issued an August 18, 2005, order granting a 30-day stay in proceedings.

In response to that August 18, 2005, order, the Secretary provided the Court with six letters from the Buffalo, New York, RO. The first three letters, one dated August 19, 1998, and addressed to Alexander Friedsam, and the remaining two letters dated August 12, 1998, of which one was addressed to Tracey Friedsam and one was addressed to Jerrilyn Friedsam, informed them that their applications for DEA benefits had been denied. *See* Appellee's Response to Court's Order Dated August 18, 2005 (Sec'y Resp.), Appendix A. The last three letters, dated September 25, 2002, indicate that the RO informed each of the Friedsam children, individually, that the NODs they each filed on September 3, 1999, regarding their respective August 1998 RO decision, were not timely, and therefore, the August 1998 RO decisions could not be appealed. *See* Sec'y Resp., Appendix B. Although these letters were not part of the record of proceedings before the Board, the Court may

3

review this evidence for the purpose of determining its jurisdiction. *See Barnett v. Brown,* 83 F.3d 1380, 1383 (Fed. Cir. 1996) ("[A] statutory tribunal must ensure that it has jurisdiction over each case *before* adjudicating the merits . . . [A] potential jurisdictional defect may be raised by the court or tribunal, *sua sponte*, or by any party at any stage in the proceedings, and once apparent, must be adjudicated."); *Henderson v. West*, 12 Vet.App. 11, 14 (1998); *Smith (Irma) v. Brown*, 10 Vet.App. 330, 332 (1997) ("[T]he Court always has jurisdiction to determine its jurisdiction over a case."); *AB v. Brown*, 6 Vet.App. 35, 37 (1993); *see also Claiborne v. Nicholson*, 19 Vet.App. 181, 184-85 (2005) ("This Court has the authority to decide jurisdictional facts."); *Shepard v. West,* 12 Vet.App. 107, 108 (1998) (per curiam order); *Stokes v. Derwinski,* 1 Vet.App. 201, 203-04 (1992) ("Court may at times consider evidence of jurisdictional facts which were not before the [Board] and thus not part of the official record before the Court.").

These letters, addressed to the Friedsam children and mailed to the address listed on their DEA applications, indicate that Tracey, Jerrilyn, and Alexander Friedsam each received decisions on their claims that, based on the limited review of the evidence before the Court, they did not timely appeal, and thus, are now final. *See* 38 U.S.C. § 7105(b)(1), (c) ("[N]otice of [D]isagreement shall be filed within one year from the date of mailing of notice of the result of initial review or determination. . . . If no [N]otice of [D]isagreement is filed . . . within the prescribed period, the action or determination shall become final and the claim will not thereafter be reopened or allowed."). Because Tracey, Jerrilyn, and Alexander Friedsam failed to initiate appellate review by filing timely NODs, the Court finds that no extraordinary circumstances exist to permit the Friedsam children to intervene in the present proceedings. The Court, therefore, will not consider the appellant's argument that VA violated her and her children's procedural due process rights by failing to issue the children SOCs in response to their NODs. *See* Appellant's Brief (App. Br.) at 26; *see also* 38 C.F.R. § 19.26 (2005) (recognizing that duty to issue an SOC is not triggered until claimant files a timely NOD). Thus, Tracey, Jerrilyn, and Alexander Friedsam's motion to intervene in this appeal is denied. Having disposed of this motion, the Court will now address the issue on appeal as it pertains to Mrs. Friedsam.

## II. FACTS

On April 3, 1989, Mrs. Friedsam, as the surviving spouse of 20-year, decorated Vietnam combat veteran Bruce Friedsam, filed an application for DIC seeking service connection for the cause of her husband's death. R. at 110. Mrs. Friedsam did not submit a formal application for DEA benefits at the time that she submitted her DIC application.

After a nine-year delay in finally adjudicating Mrs. Friedsam's claim for service connection for the cause of her husband's death, the Board granted her DIC benefits in January 1998 based on medical evidence that had been of record since July 5, 1990. R. at 236, 253-59, 356-50. In late January 1998, the Roanoke, Virginia, RO notified Mrs. Friedsam that entitlement to DIC benefits had been established from August 1988, and, as a result of that grant, she and her children were entitled to DEA benefits. R. at 354-57.

On May 21, 1998, Mrs. Friedsam submitted a formal application seeking DEA benefits. R. at 386-93. Mrs. Friedsam noted on her application that she had already completed her undergraduate and graduate studies during the almost nine years that VA had taken to process her DIC claim; thus, she was seeking retroactive DEA benefits. *Id.* In October 1998, the RO denied Mrs. Friedsam's request for retroactive DEA benefits, noting that "[h]ad you applied for [c]hapter 35 benefits when you first started school – even though a final decision had not yet been made as to your DIC eligibility – and that application was part of your record when you did become eligible, we would have been able to award retroactive benefits." R. at 438-39.

It is undisputed that Mrs. Friedsam submitted an NOD on or about November 2, 1998, stating that the "VARO Buffalo letter of 10/16/98 denied myself and three of my children educational benefits. I request to be provided with a Statement of the Case on which to base my formal appeal." R. at 443 (the Court notes that the NOD was not date-stamped as received by VA). *But see* R. at 444 (indicating that the Virginia Department of Veterans Affairs reported that Mrs. Friedsam filed an NOD on "November 2, 1998[,] and submitted [it] directly to VARO Buffalo"). The RO issued an SOC to Mrs. Friedsam on July 8, 1999. R. at 469-75. In September 1999, Mrs. Friedsam filed a Substantive Appeal and requested therein a hearing before a Board member. R. at 479. She disagreed with the RO decision of October 1998 and noted that it was "not even logical to think that we should have filed paperwork for a benefit we knew we were not yet entitled [to receive]." R. at

5

479-80.  Without providing Mrs. Friedsam with her requested hearing, in March 2003, the Board issued the decision on appeal here.  R. at 506, 512-19.  The Board denied her request for retroactive DEA benefits after finding that the earliest date that could be established for entitlement to DEA benefits was one year prior to the date of her formal claim (July 1998), or "one year prior to the date an enrollment certification [was] received in VA (here also July 1998), whichever [was] the later date."  R. at 517.  The Board also stated:

> The Board further finds that there is no basis in law or facts to consider the appellant's request on the merits.  The appellant had not filed her claim for educational assistance benefits, nor is there any indication in the record, other than her supposition that she would have filed such an application but for VA's delay in awarding her entitlement to service connection for the cause of the veteran's death, some nine years after her application was filed for dependency and indemnity compensation. . . . The appellant could have, and in retrospect, should have submitted her application at the time she filed her application for dependency and indemnity compensation, or at any time since that time.

R. at 6-8.

### III.  ANALYSIS

Before deciding a claim, the Board is required to consider all relevant evidence of record and to consider and discuss in its decision all "potentially applicable" provisions of law and regulation. *See Schafrath v. Derwinski*, 1 Vet.App. 589, 593 (1991); *see also* 38 U.S.C. § 7104(a); *Weaver v. Principi*, 14 Vet.App. 301, 302 (2001) (per curiam order).  In addition, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as to facilitate review in this Court.  *See* 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert v. Derwinski*, 1 Vet.App. 49, 56-57 (1990).  The Board must analyze the credibility and probative value of the evidence, account for that evidence that it finds persuasive or unpersuasive, and provide the reasons for its rejection of any material evidence favorable to the claimant.  *See Caluza v. Brown*, 7 Vet.App. 498, 506 (1995), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Gabrielson v. Brown*, 7 Vet.App. 36, 39-40 (1994); *Gilbert,* 1 Vet.App. at 57.  Because the Board

6

failed to discuss all potentially applicable provisions of law and failed to provide an adequate statement of reasons or bases for its decision, as set forth in the following discussion, the Court will vacate the March 2003 decision and remand the matter for readjudication consistent with this opinion.

## A. Plain Meaning and Statutory Scheme of 38 U.S.C. § 5113(b)

On the eve of oral argument, the appellant alerted the Court and the Secretary to potentially dispositive supplemental authority in this case. The Secretary has conceded, in his supplemental briefing to the Court, that the Board's statement that there was "no basis in law or facts to consider the appellant's request on the merits," was perhaps erroneous in light of this supplemental authority, 38 U.S.C. § 5113(b). Secretary's Supplemental Memorandum of Law (Sec'y Suppl. Mem. of Law) at 6.

Section 5113 was amended in November 2000 in apparent response to the Court's holdings in *Pfau v. West,* 12 Vet.App. 515 (1999), and *Erspamer v. Brown*, 9 Vet.App. 507 (1996). *See* Pub. L. No. 106-419, §113(a), 114 Stat. 1822, 1832 (Nov. 1, 2000). Although the Secretary has expressed an intent to promulgate regulations implementing this amended statutory provision, he has not yet done so. *See* Unified Agenda of Federal Regulatory and Deregulatory Action Report, 68 Fed. Reg. 30,892, 30,897 (May 27, 2003) (noting section 5113 and Pub. L. No. 106-419 as the statutory authority for the impending regulations); *see also* 68 Fed. Reg. 73,491, 73,496 (Dec. 22, 2003); 69 Fed. Reg. 38,107, 38,112 (June 28, 2004); 69 Fed. Reg. 73,739, 73,743 (Dec. 13, 2004); 70 Fed. Reg. 27,465, 27,469 (May 16, 2005); *cf.* Sec'y Suppl. Mem. of Law at 10 (asserting that implementing regulations are not required in order for section 5113(b) to be applied to pending cases and that the pending regulatory amendments addressing section 5113(b) simply "restate existing law"). In the absence of any regulatory interpretation, the Court must determine the meaning of the statutory provision by reviewing the language of the statute and, if necessary, the context within which it was enacted. *See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984) (holding that in interpreting a statute, a Court must first analyze the language of the statute and determine "whether Congress has directly spoken to the precise question at issue"); *see also Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *Gardner v. Derwinski*, 1 Vet.App. 584, 587-88 (1991) ("Principles of statutory construction require that, where a statute has a plain

meaning a Court shall give effect to that meaning. . . . [E]ach part or section [of a statute] should be construed in connection with every other part or section so as to produce a harmonious whole.").

Section 5113(b) provides:

(b)(1) When determining the effective date of an award under chapter 35 of this title for an individual described in paragraph (2) based on an original claim, the Secretary may consider the individual's application as having been filed on the eligibility date of the individual if that eligibility date is more than one year before the date of the initial rating decision.

(2) An individual referred to in paragraph (1) is an eligible person who—

(A) submits to the Secretary an original application for educational assistance under chapter 35 of this title within one year of the date that the Secretary makes the rating decision;

(B) claims such educational assistance for pursuit of an approved program of education during a period preceding the one-year period ending on the date on which the application was received by the Secretary; and

(C) would have been entitled to such educational assistance for such course pursuit if the individual had submitted such an application on the individual's eligibility date.

(3) In this subsection:

(A) The term "eligibility date" means the date on which an individual becomes an eligible person.

(B) The term "eligible person" has the meaning given that term under section 3501(a)(1) of this title under subparagraph (A)(i), (A)(ii), (B), or (D) of such section by reason of either (i) the service-connected death or (ii) service-connected total disability permanent in nature of the veteran from whom such eligibility is derived.

(C) The term "initial rating decision" means with respect to an eligible person a decision made by the Secretary that establishes (i) service connection for such veteran's death or (ii) the existence of such veteran's service-connected total disability permanent in nature, as the case may be.

The plain meaning of this language is that if the Secretary awards service connection for the cause of the veteran's death and the surviving spouse files an application for DEA benefits within one year after the issuance of the RO decision awarding service connection for the cause of the veteran's death, the DEA application may be considered as having been filed on the surviving spouse's eligibility date. This provision applies if the eligibility date is more than one year before the date of the RO decision that awarded service connection for the cause of the veteran's death. The only additional requirement is that the DEA benefits being sought must be for "an approved program of education during a period preceding the one-year period ending on the date on which the application was received by the Secretary." 38 U.S.C. § 5113(b)(2)(B).

Although it appears to the Court that Mrs. Friedsam satisfies the statutory requirements for an award of retroactive DEA benefits pursuant to this statute based on the fact that she submitted an application for DEA benefits within one year of receiving notice of her DIC award and that her claim was still pending at the time this provision was enacted, the Court cannot conclude that such an award is mandated by the statute. Based on the use of the word "may" in 38 U.S.C. § 5113(b)(1), the plain language of the statute dictates that this decision is expressly committed to the Secretary's discretion. *See* 38 U.S.C. § 5113(b)(1) (indicating that Secretary "*may* consider the individual's application as having been filed on the eligibility date of the individual if that eligibility date is more than one year before the date of the initial rating decision" (emphasis added)); *see also Gomez v. Principi*, 17 Vet.App. 369, 372 (2003) (determining, based on the plain language of 38 U.S.C. § 7105(d)(5) – where "Board of Veterans Appeals *may* dismiss any appeal" (emphasis added) – that the statute is "expressly permissive"); *Malone v. Gober*, 10 Vet.App. 539, 544 (1997) (discussing care that Secretary "may" provide as opposed to that which he "shall provide," as being left to his discretion); *Willis v. Brown*, 6 Vet.App. 433, 435 (1994) (use of word "may" in statute makes action discretionary); *see also Stewart v. Brown,* 10 Vet.App. 15, 18 (1997) (noting that an action is committed to the discretion of the Secretary where regulation uses word "may"). Although this provision uses language that can be characterized as discretionary, any action by the Secretary in applying this provision or refusing to apply this provision may be reviewed by the Court to determine whether such action was arbitrary and capricious, an abuse of his discretion, or otherwise not in

9

accordance with law. *See* 38 U.S.C. § 7261(a)(3)(A); *see also Scott v. Brown*, 7 Vet.App. 184, 189-90 (1994); *Smith (Barbara) v. Derwinski*, 1 Vet.App. 267, 279 (1991).

However, to the extent that the Secretary argues that a retroactive award of DEA benefits is not possible pursuant to the Court's holdings in *Pfau* and *Erspamer*, both *supra,* such an assertion is erroneous in light of 38 U.S.C. § 5113(b). Celia Dollarhide, the director of VA's Education Service in the Veterans Benefits Administration, testified before the House Committee on Veterans' Affairs, outlining VA's position on H.R. 625, the bill amending 38 U.S.C. § 5113, and affirming that the passage of this provision was necessary to provide "an equitable solution for designating an appropriate effective date for awarding retroactive DEA benefits when there is significant administrative delay in establishing the criteria on which entitlement to such benefits is based." *Veterans Employment: Hearing on H.R. 625 Before the House Subcomm. on Veterans Benefits*, 1999 WL 983534 (Oct. 28, 1999). Mrs. Friedsam's case mirrors the situation contemplated by Congress. She waited more than nine years for the Board to grant her application for DIC, the 1998 grant of which was based on medical evidence that had been of record since 1990. Although Mrs. Friedsam appears to have met all of the statutory criteria for an award of retroactive DEA benefits, because of the permissive nature of the statute, the Court must remand this issue for the Board to address the application of section 5113(b) in the first instance.

Although not presented by the Secretary in his briefing, the Court takes judicial notice of VA General Counsel Precedent Opinion 8-2004 (July 27, 2004) in which VA concluded, based on the United States Court of Appeals for the Federal Circuit's (Federal Circuit's) holding in *Kuzma v. Principi*, 341 F.3d 1327 (Fed. Cir. 2003), that application of amended section 5113(b) to certain claims pending before VA on the date of its enactment would result in giving the provision an impermissible retroactive effect. *See* G.C. Prec. 8-2004. To the extent that this opinion stands for a general proposition that section 5113(b) would not permit application to circumstances such as those presented in the case now before the Court, this opinion is erroneous as a matter of law. Prior to the Federal Circuit's decision in *Kuzma*, *supra*, the Court determined that "where the law or regulation changes after a claim has been filed or reopened but before the administrative or judicial appeal process has been concluded, the version most favorable to the appellant . . . will apply unless Congress provided otherwise or permitted the Secretary to do otherwise and the Secretary did so."

10

*Karnas v. Derwinski*, 1 Vet.App. 308, 313 (1991), *overruled on other grounds by Kuzma*, *supra.* The Federal Circuit clarified this rule in *Kuzma, supra*, by holding that a statute may have such a retroactive effect if Congress clearly intends that result. *Kuzma*, 341 F.3d at 1328 (citing *Landgraf v. USI Film Prods.*, 511 U.S. 244, 272-73 (1994) and holding that section 3(a) of the Veterans Claims Assistance Act of 2000, Pub. L. No. 106-475, 114 Stat. 2096, could not be applied retroactively because Congress made no mention of such an intention). Congress, however, has expressly allowed for the retroactive application of section 5113(b):

> 38 U.S.C. § 5113 Note
>
> (B) EFFECTIVE DATE. The amendments made by subsection (a) shall apply to applications first made under section 3513 of title 38, United States Code, that (1) are received on or after the date of the enactment of this Act; or
>
> (2) on the date of the enactment of this Act, are pending (A) with the Secretary of Veterans Affairs, or (B) exhaustion of available administrative and judicial remedies.

Pub. L. No. 106-419, § 113, 114 Stat. 1822, 1832 (Nov. 1, 2000); *see also* R. at 1-8 (noting that application for DEA benefits was received in 1998; however the Board decision on such entitlement was not issued until March 2003, two and a half years after the enactment of section 5113(b)). The Court thus concludes that, despite the permissive nature of the statutory provision, the Board's failure to address this "potentially applicable" provision of law, which was in effect at the time the decision on appeal was issued, resulted in a failure to discuss all applicable law and an inadequate statement of reasons or bases for its decision. *Schafrath*, *supra.* Therefore, a remand is warranted for the Board to address in the first instance the application of section 5113(b) and to comply with its duties pursuant to 38 U.S.C. § 7104(a), (d)(1).

B. Denial of Procedural Due Process

The Court agrees with the appellant that VA denied her due process by failing to afford her a hearing before a Board member, as requested in her Substantive Appeal. Upon the remand ordered herein, the appellant must be afforded a personal hearing in accordance with 38 C.F.R. §§ 20.700 (2005) and 20.904(a)(3) (2005). The Court notes that the appellant is free to raise any arguments addressed in her briefs to the Court during her hearing before the Board and present any additional evidence and arguments, and the Board is required to consider them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

## IV. CONCLUSION

Because a remand is required for the Board to address the application of 38 U.S.C. § 5113(b) and for the Board to afford the appellant a hearing, the Court will not address the remaining issues briefed by the appellant. *See Best v. Principi*, 15 Vet.App. 18, 20 (2001) ("A narrow decision preserves for the appellant an opportunity to argue those claimed errors before the Board at readjudication, and, of course, before this Court in an appeal, should the Board rule against him."). The appellant is free to argue these issues, and present any additional evidence and arguments to the Board upon remand, and the Board is required to consider them. *See Kay*, 16 Vet.App. at 534 (2002); *Kutscherousky v. West*, 12 Vet.App. 369, 372 (1999) (per curiam order). Upon remand, the Secretary is expected to provide expeditious treatment of this matter. *See* 38 U.S.C. §§ 5109B, 7112.

After consideration of the appellant's and the Secretary's briefs, arguments presented during oral argument on May 17, 2005, and a review of the ROA, the Board's March 26, 2003, decision is VACATED and the matter is REMANDED to the Board for further proceedings consistent with this decision. It is further ORDERED that the appellant's counsel's August 5, 2005, motion to intervene is DENIED.