# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 16-0338

DONALD E. ZEGLIN, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided August 28, 2018)

*Donald E. Zeglin, pro se.*

*Meghan Flanz,* Interim General Counsel; *Mary Ann Flynn*, Chief Counsel; *Selket N. Cottle*, Deputy Chief Counsel; and *Sarah W. Fusina,* all of Washington, D.C., were on the brief for the appellee.[1]

Before SCHOELEN, BARTLEY, and TOTH, *Judges*.

BARTLEY, *Judge*, filed the opinion of the Court. TOTH, *Judge*, filed a concurring opinion.

BARTLEY, *Judge:* Self-represented veteran Donald E. Zeglin appeals a May 29, 2015, Board of Veterans' Appeals (Board) decision that found proper the incurrence of a VA copayment debt for medication filled at a VA pharmacy between November 2011 and July 2013 for treatment of non-service-connected conditions. Record (R.) at 3-15.[2] This matter was referred to a panel of

---

[1] Meghan Flanz was Interim General Counsel for the appellee when his brief was submitted to the Court, but James M. Byrne has since been appointed General Counsel. In addition, since briefing was completed, Sarah E. Wolf replaced Sarah W. Fusina as lead representative of record for the appellee.

[2] The Board remanded the issues of proper accounting as to the debt and whether Mr. Zeglin is entitled to a waiver of the debt. R. at 13-15. Because this action does not constitute a final decision of the Board subject to judicial review, the Court does not have jurisdiction to consider these issues at this time. *See Howard v. Gober*, 220 F.3d 1341, 1344 (Fed. Cir. 2000); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order); 38 C.F.R. § 20.1100(b) (2018). In response to the Court's October 5, 2017, order, the Secretary informed the Court that the remanded claims are still pending before VA. Secretary's November 9, 2017, Response at 3-4; *see* Supplemental R. at 293-95, 297-303, 305-13. In addition, the Board referred to the agency of original jurisdiction (AOJ) for appropriate action the issue of whether VA improperly recouped the debt by offsetting Mr. Zeglin's disability compensation benefits. R. at 4. The Court has jurisdiction to review a referred issue only to the extent that the appellant argues that remand, rather than referral, was appropriate. *See Young v. Shinseki*, 25 Vet.App. 201, 202-03 (2012) (en banc order). Because Mr. Zeglin has not challenged the propriety of the Board's referral, the Court will not address the referred issue. *See Link v. West*, 12 Vet.App. 39, 47 (1998) ("Claims that have been referred by the Board to the [AOJ] are not ripe for review by the Court.").

the Court to address two issues relating to veterans health care: (1) VA's authority to verify that reimbursement it receives from a veteran's private health insurance carrier is comparable to the private health insurance carrier's reimbursements paid to non-federal health care entities; and (2) VA's policy to offset a veteran's medication copayment responsibility by the reimbursement it receives from the veteran's private health insurance carrier.

On March 6, 2018, a panel of this Court issued a decision that affirmed the May 29, 2015, Board decision. On March 20, 2018, Mr. Zeglin filed a motion for reconsideration or, in the alternative, a motion for full Court review pursuant to Rule 35 of the Court's Rules of Practice and Procedure. In a May 4, 2018, order, the panel, inter alia, granted the motion for reconsideration and withdrew its March 6, 2018, decision, indicating that a new decision would be issued after receiving additional responses from both parties.[3] For the reasons that follow, the Court will affirm the May 29, 2015, Board decision.

## I. FACTS

Mr. Zeglin served on active duty in the U.S. Army from September 1969 to September 1971. R. at 135.

In September 2010, Mr. Zeglin applied for VA health benefits. R. at 317-18. At that time, he indicated that he did not wish to provide financial information and, therefore, he "agree[d] to pay applicable VA copayments." R. at 317. In October 2010, VA informed him that, because he did not disclose income information, he would be required to pay an $8 copayment for each 30-day supply of medication provided by a VA pharmacy for treatment of non-service-connected conditions. R. at 319.

Beginning in November 2011, VA notified Mr. Zeglin that he had accrued an outstanding balance due to unpaid medication copayments and requested payment to satisfy the outstanding charges. R. at 358-59; *see* R. at 360-71, 461, 494 (similar billing statements dated between January 2012 and July 2013). In response, Mr. Zeglin sent correspondence to a VA medical center (VAMC) stating that he "dispute[d] the correctness of all debts and charges listed on the [November 2011]

---

[3] The Court's May 4, 2018, order requested that the Secretary respond to the motion for reconsideration within 21 days and provided Mr. Zeglin a period of 14 days within which to respond to the Secretary's response, if he desired. Both parties filed timely responses.

Statement." R. at 405. He sent similar correspondences to the VAMC following subsequent billing statements. R. at 406-21, 446-47.

In November 2012, Mr. Zeglin was informed by the Mid-Atlantic Consolidated Patient Account Center (MACPAC) that he could request waiver of the existing pharmacy copayment debt if the debt were no older than 180 days. R. at 457-59. He formally requested waiver in February 2013, R. at 444-45, which was denied by the Committee on Waivers and Compromises (COWC) because he did not complete a financial status report, R. at 439-40.

In March 2013, Mr. Zeglin sent correspondence to the MACPAC indicating that he wanted to appeal both the incurrence of the debt and the denial of waiver of the incurred debt. R. at 426-33. In April 2013, COWC again denied his waiver request for failure to complete a financial status report. R. at 423-24. In June 2013, he was afforded a hearing before the Director of MACPAC. R. at 438. A Statement of the Case was issued in June 2013, R. at 401-02, and Mr. Zeglin perfected an appeal to the Board in October 2013, R. at 377. An addendum Statement of the Case was issued in May 2014. R. at 455-56. In August 2014, Mr. Zeglin provided testimony at a Board hearing. R. at 277-91.

In the May 2015 decision on appeal, the Board found that VA properly charged Mr. Zeglin an $8 copayment for each 30-day or less supply of medication for his non-service-connected conditions and that he was responsible for such payment. R. at 11-13. In the same decision, the Board remanded the issues of the proper calculation of the incurred debt and whether he was entitled to waiver.[4] R. at 13-14. This appeal followed.

## II. ANALYSIS

The crux of this appeal centers around charges billed by VA arising from the provision of outpatient medications and how these different charges are related. The two charges at issue are: (1) a copayment charge VA billed as the health care provider (second party) to the veteran as the health care recipient (first party), and (2) a service charge VA (second party) billed to the veteran's private health insurance carrier (third party). As this case involves an area of veterans benefits not

---

[4] At various points in the May 2015 decision, including on the caption page, the Board incorrectly characterizes the remanded issues as involving an overpayment. R. at 3-4, 13-14. This mischaracterization appears to be a typographical error as it is not disputed that this case involves a debt incurred by Mr. Zeglin, not excess remuneration paid to him.

previously discussed in detail in precedent case law, the Court finds it necessary to sufficiently outline these two charges and their relationship prior to discussing the parties' nuanced arguments.

A. Background Information

*1. Medication Copayments*

A veteran is required to pay VA a copayment for each 30-day or less supply of medication VA provides on an outpatient basis for the treatment of a non-service-connected condition, unless otherwise exempted. 38 U.S.C. § 1722A(a); 38 C.F.R. § 17.110(b)(1) (2018); *see Heino v. Shinseki*, 683 F.3d. 1372, 1375-77 (Fed. Cir. 2012). In 1990, Congress initially fixed the copayment charge at $2 per medication. Omnibus Budget Reconciliation Act of 1990, Pub. L. No. 101-508, § 8012, 104 Stat. 1338 (1990) (codified as 38 C.F.R. § 622A (1990)); 38 U.S.C. § 1722A(a) (1988, Supp. 1991).

In 1999, Congress gave the Secretary the authority to increase the medication copayment amount and to establish maximum (monthly and annual) medication copayment amounts for each veteran. Veterans Millennium Health Care and Benefits Act, Pub. L. No. 106-117, § 201, 113 Stat. 1545 (1999) (codified at 38 U.S.C. § 1722A(b) (1994, Supp. 1999)). In February 2002, VA promulgated a regulation increasing the medication copayment from $2 to $7 and established maximum amounts for veterans enrolled in priority categories 2 through 6 of VA's health care system. 38 C.F.R. § 17.110 (2002); 66 Fed. Reg. 63449 (Dec. 6, 2001); *see* 38 C.F.R. § 17.36 (2018) (establishing priority groups for access to health care services based on certain factors, including combined schedular evaluation and income). In January 2006, the Secretary increased the medication copayment to $8, 70 Fed. Reg. 72326 (Dec. 2, 2005), and in June 2010 increased the copayment to $9 for veterans in priority groups 7 and 8, 75 Fed. Reg. 32670 (Jun. 9, 2010). In February 2017, VA restructured its medication copayment framework and implemented a tiered system for medication copayments, where the amount of a veteran's copayment charge (either $5, $8, or $11) depends on the type of medication provided by VA, not on the priority category of the veteran. 38 C.F.R. § 17.110 (2018); 81 Fed. Reg. 89383 (Dec. 12, 2016).

*2. VA Service Charge to Private Health Insurance Carrier for the*

*Provision of a Veteran's Medication*

When VA furnishes medical care or services to a veteran for a non-service-connected condition, including providing medications on an outpatient basis, VA may seek reimbursement of reasonable charges for such care or services from the veteran's private health insurance carrier.

38 U.S.C. § 1729(a)(1). Reasonable charges VA seeks to recover from the third party "may not exceed the amount that such third party demonstrates to the satisfaction of the Secretary it would pay for the care or services if provided by [a non-federal entity] in the same geographic area." 38 U.S.C. § 1729(c)(2)(B); *see* 38 C.F.R. § 17.101(a)(4) (2018). Third-party payors may pay either (1) the charge billed by VA or (2) an amount that it demonstrates it would pay a non-federal entity for providing the same service in the same geographic area. 38 C.F.R. § 17.101(a)(4). If the third-party payor pays an amount less than the amount billed, VA will accept it as sufficient payment, subject to verification at VA's discretion. *Id*. If VA accepts as sufficient an amount less than that billed, the service charge is considered fully satisfied. In that case, the veteran is not responsible for any remaining portion of the service charge, but will still owe the copayment charge. *See, e.g.*, Veterans Health Administrative (VHA) Directive 2012-005, 4c (issued January 23, 2012; expired January 31, 2017; rescinded May 18, 2017). If VA accepts an amount less than that billed, it may request that the third-party payor submit evidence to substantiate the appropriateness of the payment amount, including health plan or insurance policy documents, provider agreements, medical evidence, or proof of payment to other providers in the same geographic area for the same services. *Id*.

Previously, VA billed private health insurance carriers a flat rate of $51 for each prescription dispensed for a non-service-connected condition regardless of the length of supply (30, 60, or 90 days). 74 Fed. Reg. 32819, 32820 (Jul. 9, 2009); 75 Fed. Reg. 61621 (Oct. 6, 2010); *see* 38 C.F.R. § 17.101(m) (2010); 38 C.F.R. § 17.102(h) (2010). VA based this flat rate on (1) the national average of VA's drug costs for all prescriptions, and (2) the national average of VA's administrative costs associated with furnishing medications, including general overhead costs, such as buildings and maintenance, and dispensing costs, such as labor, packaging, and mailing. 74 Fed. Reg. at 32820; 75 Fed. Reg. at 61622.

In March 2011, VA changed its billing practices to more accurately reflect the actual cost of providing each medication. *See* 74 Fed. Reg. 32819; 75 Fed. Reg. 61621. VA now bills private health insurance carriers a variable rate based on (1) the "actual amount expended by the VA facility for the purchase of the specific drug," and (2) the national average of VA's administrative costs associated with furnishing medications. 38 C.F.R. § 17.101(m).[5]

---

[5] The administrative cost component is determined annually based on the average administrative cost for the

### 3. VA's Offset Policy

VA applies any reimbursement it receives from a veteran's private health insurance carrier for VA's service charge, on a dollar-for-dollar basis, to offset a veteran's copayment responsibility. If VA receives reimbursement from the insurance carrier that is equal to or more than a veteran's copayment charge, then the veteran's copayment responsibility is satisfied in full. *See* VHA Directive 2012-005[6]; *see also* VHA Directive 2006-040 (issued June 27, 2006; expired June 30, 2011); Secretary's November 9, 2017, Response Appendix B.

For example, if VA bills the veteran's private health insurance carrier a service charge of $15 for administering a prescription, and VA receives reimbursement from the insurance carrier in the amount of $10, VA may accept that reimbursement as sufficient payment for the service charge. 38 C.F.R. § 17.101(a)(4). Applying the offset policy, if the veteran's copayment is $9, then the $10 reimbursement from the private health insurance carrier for VA's service charge would fully satisfy the veteran's $9 copayment responsibility. *See* VHA Directive 2012-005, Example 4; Secretary's November 9, 2017, Response Appendix B. Each provision of services is treated independently; therefore, any excess reimbursement received for the provision of one medication is not credited toward the veteran's copayment responsibility for another medication or provision of other medical care or services. *See* VHA Directive 2012-005, Example 4.

---

prior fiscal year. 38 C.F.R. § 17.101(m). The total VA national general overhead costs are added to the total VA national drug dispensing costs; that sum is divided by the total number of VA prescriptions filled annually. *Id*. For calendar year 2009 (based on fiscal year 2008), the administrative cost component was $11.17. 74 Fed. Reg. at 32820. For calendar year 2012 (based on fiscal year 2011), the administrative cost component was $12.39. *Heino*, 683 F.3d at 1380. For calendar year 2018 (based on fiscal year 2017), the administrative cost component is $16.64. 82 Fed. Reg. 59213 (Dec. 14, 2017).

[6] Although VHA Directive 2012-005 was rescinded in May 2017, it was in effect for almost the entirety of the time period relevant to this appeal. Moreover, attached to the Secretary's November 2017 response is a declaration from the Deputy Chief Counsel with the Collections National Practice Group, Office of General Counsel, in which she averred that VA's policy remains to offset on a dollar-for-dollar basis and that VHA Directive 2012-005 was rescinded because the offset policy was included in the Consolidated Patient Account Center Policy Guide. Secretary's November 9, 2017, Response Appendix C; *see id*. at Appendix B (VHA Procedure Guide 1601C.04, Chapter 3, Section C.8). Moreover, the Deputy Chief Counsel averred that VHA has applied an offset policy pursuant to 1990 and 1996 Office of General Counsel opinions and, although neither opinion specifically mentions a dollar-for-dollar policy, VHA decided to implement a dollar-for-dollar policy "for ease of implementation and administration." Secretary's November 9, 2017, Response Appendix C; *see* VA Gen. Coun. Prec. Op. 13-1990 (May 2, 1990); VA Gen. Coun. Prec. Op. 3-1996 (May 23, 1996). Concerning the above, the Court notes that it is not relying on such evidence to reach its holding that the Court lacks jurisdiction to review VA's verification of third-party reimbursements. *See Kyhn v. Shinseki*, 716 F.3d 572, 578 (Fed. Cir. 2013) (noting that the Court is prohibited from considering evidence not in the record before the Board).

If, however, VA receives reimbursement from the private health insurance carrier for VA's service charge that is *less* than the veteran's copayment, the veteran is responsible for the copayment charge balance. *See* VHA Directive 2012-005; Secretary's November 9, 2017, Response Appendix B.

For example, if VA bills the veteran's private health insurance provider $15 for VA's service charge, and VA receives $3 in reimbursement, VA may accept that $3 to satisfy the service charge. 38 C.F.R. § 17.101(a)(4). Applying the offset policy, if the veteran's copayment is $9, the $3 reimbursement from the private health insurance carrier is applied to offset the veteran's $9 copayment, and the veteran would be responsible for the remaining $6. *See id*. As mentioned above, the veteran is not responsible for any portion of the service charge billed to the private health insurance carrier.

## B. May 2015 Board Decision

In its decision, the Board found that VA properly charged Mr. Zeglin a copayment charge of $8 for each medication VA provided on an outpatient basis for his non-service-connected conditions. R. at 11-12. The Board noted that, although 38 C.F.R. § 17.110(c) provides exemptions from copayment responsibility, Mr. Zeglin did not allege and the evidence did not otherwise demonstrate that he fell into one of the exempt categories. *Id*. The Board, therefore, found that Mr. Zeglin was responsible for paying the $8 copayment per medication provided as treatment for his non-service-connected conditions. R. at 12.[7]

In addressing several of Mr. Zeglin's arguments, the Board noted that the incurred debt appeared to have arisen due to the March 2011 change in the service charge VA bills to private health insurance carriers. R. at 6. The Board noted Mr. Zeglin's contention that, due to the March 2011 change in VA billing practices, the amount remitted by his private health insurance carrier, Blue Cross Blue Shield of South Carolina, no longer satisfied his copayment responsibility, so VA charged him the excess. R. at 7; *see* R. at 279-80. However, the Board stated that "in a vacuum, the amount that is billed by VA to the [third-party payor] does not affect the amount that [Mr. Zeglin] himself must pay for his prescriptions." R. at 11.

---

[7] Although not discussed by the Board, it is undisputed that Mr. Zeglin is a service-connected veteran assigned to priority group 3. R. at 348, 424, 440. Therefore, throughout the entire relevant time period, the correct copayment charge was $8. *See* 70 Fed. Reg. 72326; 75 Fed. Reg. 32670. Neither party argues that the $8 charge was not the correct copayment amount.

The Board also noted Mr. Zeglin's argument that VA should contact his private health insurance carrier to determine whether the amount it had reimbursed for his medications is comparable to its reimbursement to non-federal entities for the same medications in the same geographic area. R. at 12. However, the Board found that "§ 17.101(a)(4) does not provide VA the authority to do so." R. at 12. Instead, the Board found that § 17.101(a)(4) "places the burden on the private insurance company to demonstrate that the charges . . . are excessive." R. at 11.

In addressing Mr. Zeglin's arguments, the Board also discussed VA's offset policy. The Board noted that VA policy "is that '[r]eimbursements received from insurance carriers will be used to offset or eliminate [a veteran's] copayment on a dollar-for-dollar basis.'" R. at 12 (citing a VA pamphlet entitled "Facts You Should Know About Medication Copayments"[8]). The Board did not specifically discuss how the third-party reimbursement payments are applied, but implied that a veteran's copayment responsibility is only offset if the reimbursement received by VA *exceeds* the service charge VA billed to the third-party payor. Specifically, the Board noted that, following the March 2011 change in how VA's charge to the third-party payors is calculated, the third party's "reimbursement to VA was no longer enough to cover the required copayment." R. at 12. The Board further stated that § 17.101(a)(4) provides a ceiling amount that has been negotiated between VA and the third-party payor and that the "negotiated amount is not intended to cover [Mr. Zeglin's] copayment, and it is not a high enough sum to cover the copayment once the cost to produce the drugs and the administrative fees have been paid."

## C. Arguments and Analysis

Mr. Zeglin does not contend that VA does not have the authority to charge veterans copayments for medications or that he is exempt from payment. Appellant's Brief (Br.) at 1. Instead, he challenges several of the Board's findings regarding VA's offset policy and VA's authority to verify the appropriateness of the reimbursement from his private health insurance

---

[8] The VA pamphlet cited by the Board is not contained in the record of proceedings. The version that appears to be the one cited by the Board was revised in May 2010 and is available at: https://www.va.gov/healthbenefits/ assets/documents/publications/MedicationCopayBrochure.pdf (last visited August 27, 2018). The Court takes judicial notice, however, that various versions of this pamphlet have been published by VA over the years. *See* Information on Veteran's Health Insurance and Copays at VA (February 2010) (https://www.va.gov/healthbenefits/assets/ documents/publications/HealthInsCopays.pdf); Veteran's Health Insurance and Copayments at VA (April 2015) (https://www.va.gov/healthbenefits/resources/publications/IB10-77_health_insurance_copays.pdf); Medication Copayments: Facts You Should Know (February 2016) (https://www.va.gov/healthbenefits/resources/publications/ IB10-971_medication_copayment_brochure.pdf) (all last visited August 27, 2018); *see also Monzingo v. Shinseki*, 26 Vet.App. 97, 103-04 (2012) (noting that the Court may take judicial notice of facts not subject to reasonable dispute). These pamphlets all provide the same language about a "dollar-for-dollar" offset policy.

carrier. *Id*. at 1-2. In this regard, the Secretary seeks dismissal of the pending appeal, arguing that Mr. Zeglin's challenges are not with the propriety of the incurred debt, but with the proper accounting of the debt, an issue that the Board remanded in its May 2015 decision. Secretary's Br. at 5-6. The Court disagrees.

Although the two issues are related, the Board made clear findings of fact regarding how the debt was incurred. The Board found that VA had authority to charge Mr. Zeglin a copayment for VA medications for his non-service-connected conditions. R. at 11-12. The Board also found that VA's offset policy, as applied in Mr. Zeglin's case, did not result in sufficient reimbursement to fully satisfy his copayment responsibility. R. at 12. The Board further found that VA does not have the authority to verify the appropriateness of the reimbursement it receives from his private health insurance carrier. *Id*. In consideration of these findings, the Board found that the debt incurred by Mr. Zeglin was proper. R. at 13. The Board then remanded the issue of the proper calculation of the debt for a detailed accounting of the incurred charges. R. at 13 ("Having established VA's authority to charge the prescription copayment, and having determined . . . whether the Veteran's private insurance provider should, in fact, be responsible for the copayment, the Board now turns to the issue[] of [] calculating the amount of the debt itself."). Despite the Secretary's arguments to the contrary, the Board clearly remanded the issue of calculating the amount of the debt after it made adverse findings of fact regarding the process of how the debt was incurred. Therefore, the Court properly will consider Mr. Zeglin's arguments in the context of a final Board decision and will adjudicate the case on the merits.

### 1. VA's Offset Policy

Mr. Zeglin argues that the Board erred in its interpretation of VA's offset policy. He argues that the Board's interpretation of VA's offset policy—that a veteran's copayment responsibility is offset only to the extent that third-party reimbursement *exceeds* the service charge VA bills the third-party payor—is illogical because § 17.101(a)(4) provides third-party payors the option of reimbursing VA the lesser of two amounts—the service charge billed by VA or the amount the third-party payor reimburses non-federal entities for providing the same service in the same geographic area—such that the third party would never reimburse at a rate that exceeds the service charge billed by VA. Reply Br. at 10-11. He argues that VA's policy is to apply third-party reimbursements to offset a veteran's copayment responsibility *irrespective* of the amount of

reimbursement VA receives or whether it exceeds the service charge VA billed to the third-party payor. *See, e.g.,* Reply Br. at 9-11.

Although the Secretary initially espoused the Board's interpretation, Secretary's Br. at 10, he later retracted his interpretation and now agrees that the Board erred in its discussion of VA's offset policy, Secretary's November 9, 2017, Response at 5. In a declaration attached to the Secretary's November 2017 response, the Deputy Chief Counsel with the Collections National Practice Group, Office of General Counsel, confirmed that VA's policy "is to offset a veteran's copayment charge dollar-for-dollar with the amount received from a third[-]party insurance company *regardless of whether that amount is less than the amount billed to the third party*." Secretary's November 9, 2017, Response Appendix C (emphasis added).

Although both parties now agree that the Board erred in its discussion of VA policy, its error is inconsequential. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"). Mr. Zeglin acknowledges that VA is applying the reimbursement it receives from his private health insurance carrier to offset his copayment responsibilities on a dollar-for-dollar basis, *see* Reply Br. at 10, and the Board's discussion is not reflective of how reimbursements were actually applied to his copayment responsibilities. However, he makes no argument as to how he was harmed by the Board's inaccurate description of VA policy. *See* Appellant's Motion for Reconsideration at 7 ("I have never claimed to have suffered such harm, nor will I do so now. . . . In fact, prior to the Board's totally unexpected and unnecessary introduction of its distorted view of VA's offset policy into the case, the policy itself was simply not an issue."). Therefore, the Board's error in this regard is harmless and a remand for the Board to correct its error would serve no purpose. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (explaining that "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination"); *Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (holding that strict adherence to the reasons-or-bases requirement is not warranted where it would impose additional burdens on the Board with no benefit flowing to the veteran); *see also Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc) (holding that the appellant has the burden of demonstrating error), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).

### *2. Authority to Verify Third-Party Reimbursements*

The thrust of Mr. Zeglin's arguments is that the Board erred in its finding that VA does *not* have the authority to verify that reimbursements it receives from third-party payors are comparable

to that which the third party would pay to a non-federal entity for provision of the same medication. Appellant's Br. at 19-21. The Court determines that the Board also erred in this regard. Section 1729(c)(2)(B) and § 17.101(a)(4) clearly provide VA authority to request that a third-party payor demonstrate that the reimbursement is comparable to what it would remit to a non-federal entity for provision of the same service in the same geographic area. 38 U.S.C. § 1729(c)(2)(B); 38 C.F.R. § 17.101(a)(4). The Secretary does not disagree. Secretary's November 9, 2017, Response at 6. Mr. Zeglin again fails, however, to demonstrate how the Board's error is prejudicial. *See* 38 U.S.C. § 7261(b)(2).

Although the Board and the Secretary have, at times, misconstrued Mr. Zeglin's arguments, he has consistently argued that the purported debt resulted from a decrease in reimbursement payments remitted by his private health insurance carrier following VA's March 2011 change in its third-party payor billing practice. He further argues that his private health insurance carrier is remitting reimbursement at an amount less than what VA has billed and VA has failed to ensure that the reimbursement it received from his private health insurance carrier was comparable to what the insurance carrier would remit to a non-federal health care provider.

In various correspondences, Mr. Zeglin seemingly takes discordant views of VA's authority to verify third-party reimbursements as either mandatory or discretionary. At times, he argues that VA has a statutory and regulatory duty to verify the appropriateness of reimbursements from third-party payors and VA's failure to verify those reimbursements is a violation of that duty. Appellant's Br. at 10 (VA "has a duty to seek evidence and information [regarding the appropriateness of payment] and cannot avoid that duty by contract and agree to simply accept whatever amount [his private health insurance carrier] offers."); Appellant's Motion for Reconsideration at 11 (noting the Secretary's "duty to verify the appropriateness of insurer's reimbursements to VA"); Appellant's June 7, 2018, Response at 3 (arguing that VA is not "complying with its statutory and regulatory duty to verify the appropriateness of the amounts [his] private insurer reimbursed VA for [his] medication").

To the extent that Mr. Zeglin argues that VA is under a statutory and regulatory obligation to verify reimbursements rates it receives from third-party payors, the Court disagrees. A "duty" is a "legal obligation that is owed or due to another and that needs to be satisfied; an obligation for which somebody else has a corresponding right." BLACK'S LAW DICTIONARY 580 (9th ed. 2009). In contrast, a "discretionary duty" is "[a] duty that allows a person to exercise judgment and choose

to perform or not perform." *Id*. at 581. The statutory and regulatory provisions clearly reflect discretionary authority to verify the appropriateness of third-party reimbursements. 38 U.S.C. § 1729(c)(2)(B) (The amount sought to be collected "may not exceed the amount such third party *demonstrates to the satisfaction of the Secretary* it would pay for the care or services" as a non-federal entity in the same geographic area.) (emphasis added); 38 C.F.R. § 17.101(a)(4) ("VA will accept the submission as payment, *subject to verification at VA's discretion*.") (emphasis added).

At other times, Mr. Zeglin properly characterizes VA's authority to verify reimbursement rates as discretionary and argues that failure to verify those reimbursements is an abuse of discretion. *See, e.g.*, Appellant's Br. at 19 (noting that "VA may seek verification"); Appellant's Motion for Reconsideration at 8-11 (characterizing the authority to verify reimbursements as "discretionary statutory and regulatory duty"). In this vein, Mr. Zeglin argues that "VA has never sought verification from [his private health insurance carrier] . . . [and] it is this general failure to exercise its discretionary statutory and regulatory duty to verify that demonstrates the arbitrary and capricious nature of VA's lack of action." Appellant's Motion for Reconsideration at 8; *see* Appellant's Br. at 6; Appellant's June 7, 2018, Response at 3-4. As evidence of VA inaction, he relies on conversations with VA employees, Appellant's Br. at 5, 10, and that "the Secretary has never provided a shred of evidence that VA has ever actually attempted to verify the appropriateness of any insurers' reimbursements," Appellant's June 7, 2018, Response at 3. As a result, and based on VA's offset policy, he contends that, without any verification of reimbursement rates, VA has no basis to conclude that the medication co-payment charges are correct. Appellant's Br. at 22-26; Appellant's Motion for Reconsideration at 11; Appellant's June 7, 2018, Response at 4.

The Secretary avers that VA maintains a reimbursement contract with Caremark, the private pharmacy benefit manager associated with Blue Cross and Blue Shield of South Carolina, and that Caremark remits reimbursement consistent with the terms of that contract. Secretary's November 9, 2017, Response at 6-7; *see* Secretary's November 9, 2017, Response Appendix D. The Secretary further responds that, effective January 1, 2013, VA has an established third-party payor review process that evaluates reimbursement rates that takes into consideration market conditions, regional rates, and payment trends. *See* Secretary's November 9, 2017, Response at 7 and Appendix E; Secretary's May 24, 2018, Response. "[W]hen a third-party health insurance carrier reimburses VA below a market average, VA initiates a formal rate verification with the

health insurance carrier," which "requires the health insurance carrier to make available all provider agreements within the same geographic area, as well as submit historical claims data as proof of payment to other providers in the same geographic area to verify the appropriate reimbursement rate." Secretary's November 9, 2017, Response at 7. The Secretary further noted that, "[a]lthough VA did not have a policy prior to 2013, such a policy is not required as VA's right to recover or collect reimbursement is based on federal law, which provides VA with discretionary authority to verify reimbursements from third-party payers." Secretary's May 24, 2018, Response at 2 (citing 38 U.S.C. § 1729(c)(2)(B) and 38 C.F.R. § 17.101(a)(4)).

"[T]he Court has no authority to review decisions made by the Secretary which rest entirely within his discretion." *Willis v. Brown*, 6 Vet.App. 433, 435-36 (1994); *see Malone v. Gober*, 10 Vet.App. 539, 544 (1997). If no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for "abuse of discretion." *See Heckler v. Chaney*, 470 U.S. 821, 830-33 (1985) (noting that an agency's decision not to take action is presumptively immune from judicial review, but the presumption may be rebutted where the statute has provided guidelines for the agency to follow in exercising its authority); *see also Freeman v. Shinseki*, 24 Vet.App. 404, 416 (2011) ("[W]hen an agency has been given discretionary authority, it cannot be compelled to exercise that authority unless there are sufficient standards to govern when the authority must be exercised." (citing *Chaney*, 470 U.S. at 830)). If there are no standards for judicial review, the proper recourse is to dismiss the case on the merits because the appellant cannot show that the agency's action is unlawful. *See Builders Bank v. Fed. Deposit Ins. Corp.*, 846 F.3d 272, 274-75 (7th Cir. 2017).

Where either the statutory or regulatory provision places limitations on such discretionary authority, however, compliance with such criteria is subject to judicial review. *See Friedsam v. Nicholson*, 19 Vet.App. 555, 563 (2006); *Malone*, 10 Vet.App. at 545 ("Even where a matter is left to the discretion of the Secretary by statute, the Secretary would still be bound by any limitations placed upon the exercise of that discretion by regulation, and the Secretary's compliance with such regulatory criteria is subject to judicial review."). The Court may also review challenges to policies, interpretative guidance, or directives that relate to how an agency may exercise its discretionary authority. *See, e.g., Chaney*, 470 U.S. at 835-36. Judicial review in those circumstances is guided by whether the Secretary's action is "arbitrary, capricious, an abuse of

13

discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Friedsam*, 19 Vet.App. at 563.

Neither the wording of the relevant statute nor the implementing regulation places a limitation on VA's discretionary authority to verify third-party reimbursements. The statute provides VA a right to recover reasonable charges for the provision of medical care or services, but also that "[t]he Secretary may compromise, settle, or waive any claim" for reimbursement. 38 U.S.C. § 1729(c)(1). The statute further provides that reasonable charges may not exceed the amount the third-party payor demonstrates to the satisfaction of the Secretary that it would pay for the same care or services to a non-federal entity in the same geographic area. 38 U.S.C. § 1729(c)(2)(B). The implementing regulation provides that VA has discretion to verify the appropriateness of the reimbursement amount. 38 C.F.R. § 17.101(4). Although the regulation specifies what type of evidence VA may request from a third-party payor to properly verify the payment, there are no instructive standards regarding when and how VA will exercise its discretion.

Mr. Zeglin argues that, although the Secretary has averred that a VA policy in verifying reimbursement rates existed as of January 1, 2013, the absence of a policy prior to that date or any evidence of VA actually verifying reimbursements rates from his private health insurance carrier is reflective of VA's abuse of discretion. Appellant's Motion for Reconsideration at 10-11; Appellant's June 4, 2018, Response at 3-4. The fact that VA had established internal procedures for verifying reimbursement rates from third-party payors for only a portion of the relevant period during which Mr. Zeglin incurred copayment charges does not abrogate VA's discretionary authority to seek verification. The existence of an implemented policy does not necessarily provide a judicially manageable standard capable of review. *See Chaney*, 470 U.S. at 836-37. Furthermore, Mr. Zeglin has not offered argument based on any internal restraints of discretionary authority; instead, he has simply maintained that VA's purported inaction is clear evidence of an abuse of its discretion. *See, e.g.*, Appellant's Motion for Reconsideration at 11; Appellant's June 7, 2018, Response at 2-4.

Absent any judicially manageable standard in either the statute or regulation, the Court concludes that VA's authority to seek verification from third-party payors regarding the appropriateness of reimbursement payments is wholly discretionary and not subject to judicial review. *See Chaney*, 470 U.S. at 830-31; *Freeman*, 24 Vet.App. at 416; *see also Norton v. S. Utah*

14

*Wilderness All.*, 542 U.S. 55, 63 (2004) (noting that the only agency action that can be compelled is such action an agency is legally required to perform). The Court emphasizes that our conclusion regarding VA's discretionary authority in this context is based on a review of the applicable statute and regulation, not on VA's internal procedures described by the Secretary in several responses in this case. *See Kyhn*, 716 F.3d at 578.

Review of the record confirms Mr. Zeglin's contention that he began consistently accruing an outstanding debt associated with his medication copayments after VA changed its practice regarding billing third-party payors in March 2011. *See* R. at 307-12, 316. Although the Secretary initially averred that Mr. Zeglin's private health insurance carrier was reimbursing at a rate equal to what VA billed, Secretary's Br. at 8, he later retracted that statement, Secretary's November 9, 2017, Response at 8. Moreover, it appears from the record that his private health insurance carrier is remitting less reimbursement to VA than it did prior to the March 2011 billing change for provision of the same services. *See* R. at 316.

The amount of reimbursement VA receives from Mr. Zeglin's private health insurance carrier has a direct effect on the copayment charge he incurs. Nevertheless, VA has discretion in whether to seek verification from his private health insurance carrier regarding the appropriateness of the amount of reimbursement it receives. The decision whether to seek verification from Mr. Zeglin's private health insurance carrier is not reviewable. Therefore, although the Board erred in stating that VA lacked authority to verify reimbursement amounts, the Board's error is harmless because VA's authority is wholly discretionary. *See* 38 U.S.C. § 7261(b)(2); *see also Sanders*, 556 U.S. at 409; *Hilkert*, 12 Vet.App. at 151.

In sum, Mr. Zeglin agrees with the Board's ultimate conclusion that VA has the authority to charge him medication copayments for treatment of non-service-connected conditions, which serves as the primary basis for the incurred debt. Although the Board erred in its discussion regarding VA's offset policy, Mr. Zeglin acknowledges that VA is applying an offset of his copayment responsibility on a dollar-for-dollar basis with reimbursement it receives from his private health insurance carrier. Finally, although the Board erred in finding that VA does not have the authority to verify the appropriateness of third-party reimbursements, which are used as offsets of his copayment responsibility, the Board's error in this regard is harmless because VA's authority to verify third-party reimbursements is wholly discretionary. Accordingly, this matter will be affirmed.

### III. CONCLUSION

Upon consideration of the foregoing, the May 29, 2015, Board decision is AFFIRMED.


TOTH, *Judge*, concurring: I agree that the Board's error was harmless and join the Court's opinion in full. I write separately only to note that our reasoning in no way suggests that all actions or policies related to section 1729 are shielded from review simply because the statute contains discretionary language. I read our invocation of the non-reviewability doctrine as a narrow, merits-based (and not jurisdictional) determination that is directed by the nature of Mr. Zeglin's claim of error.

Specifically, Mr. Zeglin never actually formulated any claim that, even liberally construed, amounted to a challenge to any discrete action, policy, or interpretation of law on VA's part. And although he mentioned policies and used terminology associated with various aspects of administrative review, his claim of error even on reconsideration never evolved beyond where it began: as a dispute about debt amounts resulting from VA's failure to take action in his case. Section 1729 accords VA the discretion whether to take action and so there is no judicially manageable standard by which we can review its decision not to act.